BRADER *v.* JAMES, FORMERLY REEVES.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 126.   Argued January 7, 8, 1918.—Decided March 4, 1918.

Under the Supplemental Agreement with the Choctaws and Chickasaws of July 1, 1902, c. 1362, 32 Stat. 641, a homestead allotment of a full-blood Choctaw became free from the restrictions imposed by § 12 at the death of the allottee, and the heir of the allottee, though a full-blood, might alienate the land without approval of the

conveyance by the Secretary of the Interior.  *Mullen* v. *United States*, 224 U. S. 448.

But, by virtue of the Act of April 26, 1906, c. 1876, 34 Stat. 137, § 22, the right in such case was again restricted so that the full-blood heir could no longer convey without the Secretary's approval.

In determining the effect of the Act of 1906, *supra*, upon the right of a full-blood Indian to alienate, no distinction can be made between cases in which restrictions, previously imposed, were existent at the date of the act (*Tiger* v. *Western Investment Co.*, 221 U. S. 286), and those in which they had expired.  Congress was dealing with tribal Indians still under its control and subject to national guardianship; and the act, comprehensive, and applying alike to all the Five Civilized Tribes, evinces a purpose to substitute a new and uniform scheme controlling alienation as to all the full-blood allottees and their full-blood heirs.  Section 22 is to be construed accordingly.

In view of the repeated decisions of this court, there can be no doubt of the constitutional authority of Congress to impose the new restriction.  *United States* v. *First National Bank*, 234 U. S. 245; and *United States* v. *Waller*, 243 U. S. 452, distinguished.

49 Oklahoma, 734, affirmed.

THE case is stated in the opinion.

*Mr. E. A. Blythe* and *Mr. D. M. Tibbetts*, with whom *Mr. Fred W. Green* and *Mr. J. H. Brader* were on the briefs, for plaintiff in error:

The Act of April 26, 1906, was general, applying to all of the Five Civilized Tribes.  There was no repeal by express reference of the former special acts relating to their lands and therefore their provisions remained unless repealed by necessary implication.  *Washington* v. *Miller*, 235 U. S. 422; Endlich on Interpretation of Statutes, § 223; *Jefferson* v. *Cook*, 155 Pac. Rep. 852.

The Act of 1906, while making the retrictions in some instances more burdensome upon allotted lands (§ 19), is essentially intended to relieve restrictions upon inherited lands (§ 22).  Being prospective and permissive in terms, it should not be construed as an attempt to affect the status of lands upon which restrictions had been removed

or had expired by virtue of a prior special act.· *United States* v. *Hemmer*, 241 U. S.· 379; *Levindale Lead Co.* v. *Coleman*, 241 U. S. 432.

The estate acquired by Rachel James upon the death of her mother was an estate in fee simple, free from all restrictions upon alienation by reason of· contractual relations existing between the ·members of the Choctaw and Chickasaw Tribes and the United States by virtue of the Act· of July 1, 1902, and therefore Congress retained no power thereafter to diminish her estate or property in the real estate so acquired by a later enactment. *Choate* v. *Trapp*, 224 U. S. 665; *Jones* v. *Meehan*, 175 U. S. 1; *Holden* v. *Joy*, 17 Wall. 211; *Wilson* v. *Wall*, 6 Wall. 83; *Bartlett* v. *United States*, 203 Fed. Rep. 410.

She became a citizen of the United States by the Act of March 3, 1901, 31 Stat. 1447. *Tiger* v. *Western Investment Co.*, 221 U. S. 286.

By the gift of citizenship the foreign or dependent status of the members of the nation or tribe was changed in all particulars except as to such choses in action, annuities and other reserve properties as were originally retained by the United States in the different acts of Congress leading up to and preceding the gift of citizenship. *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294; *Tiger* v. *Western Investment Co., supra; United States* v. *Bartlett*, 235 U. S. 72.

The lands in controversy were allotted and inherited by a citizen of the United States, free from restrictions, with a full vested right of alienation. *Sunday* v. *Mallory*, 237 Fed. Rep. 526; *Bartlett* v. *United States*, 203 Fed. Rep. 410; *United States* v. *Hemmer*, 241 U. S. 379.

The power of Congress is limited to the extension of restrictions already existing and it cannot go so far as to impose restrictions upon lands against which none existed at the time of the act, belonging to a citizen. *Tiger* v. *Western Investment Co. supra; Heckman* v. *United States,*

224 U. S..413; *Choate* v. *Trapp, supra; Bartlett* v. *United States, supra; Sunday* v. *Mallory,, supra.*　　.

*Mr. A. M. Works* and *Mr. Joseph C. Stone* for defendant in error:

The Act of April 26, 1906, provides a comprehensive scheme which affects all the full-blood citizens of the Five Civilized Tribes and their full-blood heirs and all of their allotted lands in the Indian Territory. It is a substitute for, and repeals all prior legislation relating to restrictions upon full bloods.

The literal and natural meaning of § 22 of the act brings the allotted lands theretofore unrestricted within the terms of the act requiring all conveyances by full-blood Indian heirs of their inherited allotments to be approved by the Secretary of the Interior.

To construe § 22 so as to require all conveyances by Indian heirs of the full blood conveying their allotted lands to be made under the supervisory control of the Secretary of the Interior is in full accord with the general spirit and policy of the entire act and other legislation *in pari materia.* The necessity for supervision was the same whether the lands were theretofore alienable without approval or alienable only with the approval of the Secretary. The act should be construed liberally in the interest of the Indians to meet the necessities of the Indians, and to correct, as Congress intended, the mistakes of prior legislation. Sections 19 and 23 aid in the construction of § 22.

Section 22 provides merely a procedure for the alienation of their inherited lands by full-blood Indian heirs and does not prohibit the alienation thereof, nor does it impair any property rights or contractual relations. The method of procedure provided is reasonable, and is analogous to many state laws which permit the sale of the family homestead only with the approval of the spouse

of the grantor.  The grantee of the Indian cannot avail
himself of the right, if any, of the Indian to assert the
unconstitutionality of the act which provides this pro-
cedure:

The authority of Congress to enact §§ 22 and 19 and
similar provisions in the act is grounded in necessity be-
cause the power exists nowhere else.  The dependence of
the Indians on the one hand and the duty of the Govern-
ment on the other have resulted in a well established
governmental policy commensurate with the needs of
the Indians, and Congress alone must determine when
this policy, called a guardianship, is determined.

This case is not distinguishable from *Tiger* v. *Western
Investment Co.*, 221 U. S. 286.

*Mr. Assistant Attorney General Kearful*, by leave of
court, filed a brief on behalf of the United States as *amicus
curiæ*, contending that the Act of 1906 applied and was
within the power of Congress.  On the latter point it was
said:

In *Tiger* v. *Western Investment Co.*, 221 U. S. 286, it was
held that Congress had the power to extend the period
of restriction on full-blood allotments.  There is no sub-
stantial difference, so far as concerns the Indian's prop-
erty right, between the extension of an existing restriction
period and the re-imposition of the same restriction for a
given time after the expiration of the original period.  The
reasons which justify such action are the same in the one
case as in the other.  Notwithstanding the grant of citizen-
ship and the removal of restrictions, the duty of protection
which the Nation owes to dependent Indians is not dis-
charged and the national honor which has been pledged
to the fulfillment of that obligation remains.  Even the
grant of citizenship to tribal Indians may be, as it has
been in a measure, retracted.  *United States* v. *Pelican*,
232 U. S. 442, 450–451.  The power to deal with their

affairs is not to be measured by a single act of hasty legislation. *United States* v. *Celestine*, 215 U. S. 278, 290–291. The national interest in them is not to be expressed in terms of property. *Heckman* v. *United States*, 224 U. S. 413, 437. So long as they are maintained as wards of the Nation—and it is not to be denied that the full bloods of the "Five Civilized Tribes" are still so maintained—the power to adopt any measure which in the judgment of Congress is needful for their protection is "a continuing power of which Congress could not divest itself." *United States* v. *Nice*, 241 U. S. 591, 600.

MR. JUSTICE DAY delivered the opinion of the court.

This case involves the right of Rachel James, a full-blood Choctaw Indian, to convey certain land. The land was originally allotted to Cerena Wallace under the Supplemental Agreement with the Choctaws and Chickasaws of July 1, 1902, 32 Stat. 641. As to the homestead allotment, which is here in question, § 12 of said agreement provided that it should be inalienable during the lifetime of the allottee, not exceeding twenty-one years from the date of the certificate of allotment. Cerena Wallace, mother of Rachel James, and herself a full-blood Choctaw Indian, died October 27, 1905, leaving her daughter, Rachel James, sole surviving heir at law. On August 17, 1907, Rachel James, joined by her husband, conveyed the land, embraced in the original homestead allotment, with some other lands, to Tillie Brader, who conveyed by quit-claim deed of September 13, 1909, to the plaintiff in error. The conveyance by Rachel James to Tillie Brader was not approved by the Secretary of the Interior. Rachel James prosecuted this suit to recover the land, and for use and occupation thereof, basing her right of recovery on the fact that her conveyance had not been approved by the Secretary of the Interior. She succeeded in the court of original jurisdiction, and the judgment .

was affirmed by the Supreme Court of Oklahoma. 49 Oklahoma, 734.

The case as brought to our attention involves two questions:

- 1. Could a full-blood Choctaw Indian, after the passage of the Act of April 26, 1906, 34 Stat. 137, convey the lands inherited from a full-blood Choctaw Indian, to whom the lands had been allotted in her lifetime, without the approval of the Secretary of the Interior?

2. If such conveyance were made valid by the act of Congress only with the approval of the Secretary of the Interior, is such legislation constitutional?

As to the homestead allotment to the mother, Cerena Wallace, under the Supplemental Choctaw and Chickasaw Agreement of July 1, 1902, Rachel James as her heir at law received the land free from restriction, and had good right to convey the same unless prevented from so doing by the Act of April 26, 1906. *Mullen* v. *United States*, 224 U. S. 448. As the conveyance here in question was subsequent to the Act of April 26, 1906, if that act covers the case, and is constitutional, Rachel James may not convey without the approval of the Secretary of the Interior, and the judgment below was righ⁺

The Act of April 26, 1906, was before this court in *Tiger* v. *Western Investment Co.*, 221 U. S. 286. In that case it was held that a full-blood Indian of the Creek Tribe, after the passage of the Act of April 26, 1906, could not convey land which he had inherited, and which was allotted under the act of Congress known as the Supplemental Creek Agreement of June 30, 1902, 32 Stat. 500, and as to which the five years named in § 16 of that act had not expired when Congress passed the Act of April 26, 1906, without the approval of the Secretary of the Interior. In that case, as in this, a construction of § 22 of the last-named act was directly involved. That section provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a State or Territory, then by a proper court of the county in which said minor or minors may reside. or in which said real estate is situated, upon an order of such court made. upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

The conveyance by Rachel James is within the terms of the section as construed in the *Tiger Case*, unless the fact that the restriction of the act under which she inherited had expired when the Act of April 26, 1906, was passed, whereas in the *Tiger Case* the former limitation had not expired when the act was passed, makes such difference as to require a different ruling in the present case. We are of opinion that this fact does not work a difference in result. As set forth in the opinion in the *Tiger Case*, the Act of April 26, 1906, was a comprehensive one, and intended to apply alike to all of the Five Civilized Tribes, and to make requirements as to conveyances by full-blood Indians and the full-blood heirs of Indians, which should take the place of former restrictions and limitations. The purpose was to substitute a new and uniform scheme controlling alienation in such cases, operating alike as to all the Civilized Tribes. Notwithstanding Rachel James might have conveyed the homestead allotment after it descended to her, she was a Tribal Indian, and as such

still subject to the legislation of Congress enacted in discharge of the Nation's duty of guardianship over the Indians. Congress was itself the judge of the necessity of legislation for this purpose; it alone might determine when this guardianship should cease.

The argument that the language in the last sentence of § 22 must be taken to mean that Congress had no intention to deal with restrictions under former acts, certainly not with those which had expired, is answered by the consideration that Congress was dealing with Tribal Indians, still under its control and subject to national guardianship. In the terms of this act Congress made no exception as to rights of alienation which had arisen under former legislation, and it undertook, as we held in the *Tiger Case*, to pass a new and comprehensive act declaring conveyances, of the class herein under consideration, to be valid only when approved by the Secretary of the Interior.

In view of the repeated decisions of this court we can have no doubt of the constitutionality of such legislation. While the tribal relation existed the national guardianship continued, and included authority to make limitations upon the rights which such Indians might exercise in respect to such lands as are here involved. This authority did not terminate with the expiration of the limitation upon the rights to dispose of allotted lands; the right and duty of Congress to safeguard the rights of Indians still continued. It has been frequently held by this court that the grant of citizenship is not inconsistent with the right of Congress to continue to exercise this authority by legislation deemed adequate to that end. It is unnecessary to again review the decisions of this court which support that authority. Some of them were reviewed in the *Tiger Case*. The doctrine is reiterated in *Heckman* v. *United States*, 224 U. S. 413, and *United States* v. *Nice*, 241 U. S. 591, 598.

The plaintiff in error relies upon *Choate* v. *Trapp*, 224 U. S. 665, in which this court sustained a contractual exemption as to taxation of certain Indian lands. In that case the right of exemption was based upon a valid and binding contract, and that decision in no wise militates against the right of Congress to continue to pass legislation placing restrictions upon the right of Indians to convey lands allotted as were those in question here. In *United States* v. *First National Bank*, 234 U. S. 245, and *United States* v. *Waller*, 243 U. S. 452, this court dealt with lands as to which certain mixed-blood Indians by act of Congress had been given full ownership with all the rights which inhere in ownership in persons of full legal capacity. Those decisions do not place limitations upon the right of Congress to deal with a Tribal Indian whose relation of ward to the Government still continues, and concerning whom Congress has not evidenced its intention to release its authority.

We find no error in the judgment of the Supreme Court of Oklahoma, and the same is affirmed.

*Affirmed.*