## JONES v. WHITLOW, County Treasurer.

No. 8665—Opinion Filed Oct. 22, 1918.

(175 Pac. 753.)

(Syllabus.)

### Taxation—State Taxation—Deed.

Lands, theretofore taxable, purchased from their private owners, with royalties accruing to a full-blood Creek Indian from her restricted allotment, are not exempted from state taxation by a clause in the deed from the grantor making the lands inalienable without the consent of the Secretary of the Interior.

Error from District Court, McIntosh County; R. W. Higgins, Judge.

Action for injunction by Ella Jones against C. S. Whitlow, as County Treasurer of McIntosh County. From a judgment for defendant, sustaining a demurrer to the petition, plaintiff brings error. Affirmed.

John W. Porter, for plaintiff in error.

E. I. O'Reilly, Co. Atty., for defendant in error.

OWEN, J. Ella Jones, a full-blood Creek Indian, brought this action, in the district court of McIntosh county, to enjoin the county treasurer from collecting taxes on certain described lands in that county. In her petition she alleges that she is a full-blood Creek Indian, and as such received an allotment of lands of the Creek Nation; that this land had been leased for oil purposes from which certain royalties had been paid to the Secretary of the Interior for her use and benefit; that a portion of this money had been invested for her under the direction of the Secretary in lands theretofore taxable, and against which the treasurer was seeking to collect taxes for 1915: that the deed conveying this land to her contained a provision to the effect that such lands should be inalienable, except with the approval of the Secretary of the Interior, during the lifetime of such grantee, prior to April 26, 1931; that such lands, purchased with the royalties received from her allotment, were not taxable, for the reason that her allotment was exempt from taxation, and the royalties received therefrom were a trust fund held by the Secretary for her use and benefit, and the lands purchased with such funds were impressed with the trust relation, and therefore not taxable. She prayed for an injunction restraining the treasurer from collecting the taxes. A de-

murer was sustained to the petition, and from that judgment she appeals.

The question necessary for determination is whether these lands, purchased with funds derived from oil royalties, are mpressed with the same restrictions as to nontaxability as the restricted allotment from which the royalties were received. The act of Congress of May 27, 1908 (35 Stat. at L. 312, c. 199), provides for the leasing of these restricted lands for oil and gas purposes, with the approval and under rules and regulations provided by the Secretary of the Interior. The rules and regulations prescribed provide for the payment of the royalties to the Secretary for the use and benefit of the allottees; but there is nothing in the act which contemplates control of the property for which the fund is expended. That portion of the act imposing the restrictions necessary to be noticed here reads:

"The status of the lands allotted heretofore or hereafter, to allottees of the Five Civilized Tribes, shall, as regards restrictions on alienation or incumbrance, be as follows," etc.

It will be noticed the lands on which the restrictions are imposed are the lands allotted heretofore or hereafter to the allottees. No mention is made of lands purchased by or for the allottees. There is nothing in this language, or in any portion of the act, indicating any intention of Congress to empower the Secretary of the Interior to impose restrictions, or to hold in trust lands purchased for allottees with royalties accruing from their allotments. It is not sufficient to say that the royalties, while in the hands of the Secretary, are held as a trust fund and therefore nontaxable. In the case of U. S. Fidelity & Guaranty Co. v. Hansen, 36 Okla. 449, 129 Pac. 67, the contention was made that, as the United States held the land in trust for the allottee, the money received was impressed with the same trust character as the land, and that the guardian had no right to receive, as guardian, the money paid for the land. In disposing of the contention, in an opinion by Commissioner Rosser, it was said:

"It can hardly be contended that after the money had been paid to the grantor, or to his or her guardian, the trust continues. The Secretary permitted the money in this case to be paid to the guardian. This put an end to the trust in the legal sense."

In the case of McCurdy, Co. Treas. Osage Co., v. United States 246 U. S. 263, 38 Sup. Ct. 289, 62 L. Ed. 706, a similar question was before the Supreme Court of the United States. The question was whether the land purchased for a noncompetent Osage Indian with trust funds was exempt from state taxation by reason of a clause in the deed identical with the clause under consideration here. It was contended there, as in this case, that as the land had been bought with trust funds for the Indian and by deed made inalienable without the consent of the Secretary of the Interior, it was, while so held, an instrumentality lawfully employed by the government for the protection of the Indian, and as such exempt from taxation by the state. The act of Congress relating to the Osage Indians (Act April 18, 1912, c. 83, 37 Stat. 87) authorized the Secretary of the Interior, in his discretion to pay to any Osage allottee, under rules and regulations prescribed by him, all or any part of the Osage trust funds held for the benefit of such allottee. The Secretary expended the money which was applied in payment for the allotment of land in the city of Pawhuska. In that case, in an opinion by Mr. Justice Brandeis, it was said:

"There is nothing in the act or in the facts to which it applies that indicates a purpose to extend governmental control to property in which released funds may be invested. And there are, in both the act of 1906 and in that of 1912, provisions which show that Congress intended to restrict the tax exemption. By section 2 of the act of 1906 the surplus lands became taxable after three years, even if they remained inalienable. By section 7 of the act of 1912 both the lands and funds of the allottees or their heirs are protected against claims arising prior to competency. inheritance, or removal of restrictions; but it is expressly provided 'that nothing herein shall be construed so as to exempt any such property from liability for taxes'."

After quoting the regulations prescribed by the Secretary, to the effect that the money is to be expended under the supervision of the Secretary. of the Interior, it was said:

"Like the act under which they are framed, these regulations contemplate supervision of the expenditure of money, not control of the property, if any, for which the money is expended. They tend to confirm the contention of the appellant that, after the money is paid out of the bank. it and property in which it may be invested are to be free from any restriction. * * * While an Indian is still a ward of the nation, there is power in Congress even to reimpose restrictions on property already freed (Brader v. James, 246 U. S. 88, 38 Sup. Ct. 285, 62 L. Ed. 591 * * *) ; but Congress did not confer upon the Secretary of the Interior authority to exercise such power under the circumstances of

this case, or to give to property purchased with the released funds immunity from state taxation."

Counsel for plaintiff in error rely upon the case of United States v. Thurston County, 143 Fed. 287, 74 C. C. A. 425, where attempt was made to tax the trust funds while in the hands of the government, and the case of United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, where it was sought to tax property the legal title of which was in the United States, held in trust and for the benefit of the Indians. There is a clear distinction between the present case and those cases.

The judgment of the lower court is affirmed.

All the Justices concur, except TURNER and BRETT, JJ., not participating.