**GLENN et al. v. LEWIS et al.**
No. 1813.

Circuit Court of Appeals, Tenth Circuit.
June 22, 1939.

Hugh A. Ledbetter, of Ardmore, Okl., and Charles L. Orr, of Holdenville, Okl.

(H. E. Ledbetter, of Ardmore, Okl., on the brief), for appellants.

C. L. McArthur, of Ada, Okl. (E. W. Kemp, of Ada, Okl., on the brief), for appellee Bessie Lewis.

Norman McDonald, Atty., Dept. of Justice, of Washington, D. C. (Carl McFarland, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty, and Charles N. Champion, Asst. U. S. Atty., both of Muskogee, Okl., and Thomas Harris, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee the United States.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNAMER, District Judge.

PHILLIPS, Circuit Judge.

Jackson Lewis was a full-blood Chickasaw Indian enrolled opposite roll No. 60. He died on March 24, 1934. A tract of land in Pontotoc County, Oklahoma, containing approximately 120 acres, was allotted to him as his homestead and on February 15, 1906, a patent duly issued therefor. On July 15, 1930, a tax exemption certificate covering the allotment was issued to him pursuant to the Act of May 10, 1928, 45 Stat. 495.

The restrictions imposed on the homestead allotment by Sec. 1 of the Act of May 27, 1908, 35 Stat. 312, and extended by the Act of May 10, 1928, 45 Stat. 495, had not been removed at the time of his death. On the death of Jackson Lewis a one-third interest in the homestead allotment passed by inheritance to Bessie Lewis, an enrolled 7/8ths blood Choctaw Indian.

At the time of the death of Jackson Lewis, Bessie Lewis was the owner of 90 acres of land which had been allotted to her, and a tax exemption certificate covering such land had been issued to her pursuant to the Act of May 10, 1928.

Bessie Lewis executed and delivered to Faye Glenn a mortgage and two mineral deeds covering her one-third interest in the Jackson Lewis homestead allotment. None of them was approved either by the Secretary of the Interior or by any county court in Oklahoma.

Thereafter, Faye Glenn executed and delivered three mineral deeds covering the one-third interest of Bessie Lewis in the Jackson Lewis homestead allotment to C. F. Dillard, trustee, Nannie Kirby, C. D. Williams, and H. A. Ledbetter.

On August 3, 1935, Bessie Lewis brought this suit in the district court of Pontotoc County, Oklahoma, against the mortgagee and grantees above named, to cancel the mortgage and deeds and to quiet the title to her one-third interest in the Jackson Lewis homestead allotment. The suit was predicated on the proposition that such one-third inherited interest was restricted and that the mortgage and deeds from Bessie Lewis, lacking requisite approval, were invalid. Notice of the pendency of the suit was served on the Superintendent of the Five Civilized Tribes, and the suit was duly removed to the United States District Court for the Eastern District of Oklahoma, pursuant to the Act of April 12, 1926, 44 Stat. 239, 240. The United States filed a petition of intervention in behalf of Bessie Lewis as an Indian ward.

The defendants filed answers and cross-petitions in which they denied that the inherited interest of Bessie Lewis in the Jackson Lewis allotment was restricted; asserted that the mortgage and mineral deeds from her were valid and binding; and prayed a decree quieting the title in them in accordance with their respective interests.

From a decree cancelling the mortgage and mineral deeds and quieting the title in Bessie Lewis, the defendants have appealed.

The pertinent statutes dealing with restrictions on lands allotted to members of the Five Civilized Tribes enacted prior to January 27, 1933, are set forth in Note 1.[1]

---

[1] Section 1 of the Act of May 27, 1908, 35 Stat. 312, in part reads as follows:

"That from and after sixty days from the date of this Act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation; contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this Act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this Act".

Section 9 of the Act of May 27, 1908, 35 Stat. 315, in part reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * *"

Section 1 of the Act of April 12, 1926, 44 Stat. 239, amending Section 9 of the Act of May 27, 1908, in part reads as follows:

"The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator * * *."

Section 1 of the Act of May 10, 1928, 45 Stat. 495, in part reads as follows:

"That the restrictions against the alienation, lease, mortgage, or other encumbrance of the lands allotted to members of the Five Civilized Tribes in Oklahoma, enrolled as of one-half or more Indian blood, be, and they are hereby, extended for an additional period of twenty-five years commencing on April 26, 1931: Provided, That the Secretary of the Interior shall have the authority to remove the restrictions, upon the applications of the Indian owners of the land, and may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

For prior statutes dealing with restric-

Sec. 4 of the Act of May 10, 1928, 45 Stat. 496, provides that after April 26, 1931, allotted, inherited, and devised restricted land of members of the Five Civilized Tribes in excess of 160 acres shall be subject to taxation by the state of Oklahoma; that each Indian owner shall select from his restricted land not more than 160 acres to remain exempt from taxation; that a tax exemption certificate shall be issued, and that the land designated in the certificate shall be tax exempt while the title remains in the Indian designated in the certificate or in any full-blood Indian heir or devisee of the land.

Sec. 1 of the Act of January 27, 1933, 47 Stat. 777, in part reads as follows:

"That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe: Provided, That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law: Provided further, That such restricted and tax-exempt land held by anyone, acquired as herein provided, shall not exceed one hundred and sixty acres: And provided further, That all minerals including oil and gas, produced from said lands so acquired shall be subject to all State and Federal taxes as provided in section 3 of the Act approved May 10, 1928 (45 Stat.L. 495)."

The question presented here is whether the one-third interest in the Jackson Lewis homestead allotment which passed to Bessie Lewis by inheritance was restricted in the hands of Bessie Lewis by virtue of the provisions of Sec. 1 of the Act of January 27, 1933.

It is important to consider the status of allotted lands of members of the Five Civilized Tribes with respect to restrictions and taxation prior to the enactment of the last-mentioned act.

Since July 26, 1908, by virtue of Sec. 1 of the Act of May 27, 1908, homestead allotments of members of the Five Civilized Tribes of one-half or more Indian blood have been restricted against alienation or incumbrance without the approval of the Secretary of the Interior.

Sec. 9, as amended, of the Act of May 27, 1908, provides that the death of an allottee shall remove all restrictions except as to lands of a full-blood Indian acquired by inheritance or devise from an allottee, and subjects such lands in the hands of the Indian heir or devisee to qualified restrictions. [2]

■ Under the Act of May 27, 1908, as amended by the Act of April 12, 1926, funds in the hands of the Secretary of the Interior which passed by inheritance or devise to full-blood Indian heirs or devisees remained restricted. Parker v. Richard, 250 U.S. 235, 239, 240, 39 S.Ct. 442, 63 L. Ed. 954.

■ Prior to April 26, 1931, allotted lands held by the original allottees and allotted lands acquired by full-blood Indians through devise or inheritance from an allottee and held by the heir or devisee were nontaxable. Sec. 4, Act of May 27, 1908, 35 Stat. 313; Powell v. City of Ada, 10 Cir., 61 F.2d 283, 285. On the death of the allottee, allotted lands, except those passing by devise or inheritance to full-blood Indian heirs, became subject to taxation. Parker v. Richard, supra, 250 U.S. page 239, 39 S.Ct. 442, 63 L.Ed. 954; United States v. Shock, C.C., 187 F. 870, 872, 873.

Since April 26, 1931, restricted lands have been subject to taxation, except not

tions on lands allotted to members of the Five Civilized Tribes see the Act of June 28, 1898, 30 Stat. 495; the Act of April 21, 1904, 33 Stat. 189, 204; §§ 19 and 22 of the Act of April 26, 1906, 34 Stat. 137, 144, 145.

2 Parker v. Richard, 250 U.S. 235, 238, 239, 39 S.Ct. 442, 63 L.Ed. 954; Com-

missioner v. Owens, 10 Cir., 78 F.2d 768, 769, 775; United States v. Mid-Continent Petroleum Corp., 10 Cir., 67 F.2d 37, 42; Pitman v. Commissioner, 10 Cir., 64 F. 2d 740, 742; Holmes v. United States, 10 Cir., 53 F.2d 960, 963; United States v. Gypsy Oil Co., 8 Cir., 10 F.2d 487, 488-490.

to exceed 160 acres of land while held by the allottee or by a full-blood Indian heir or devisee, for which a tax exemption certificate has been issued.

Sec. 1 of the Act of January 27, 1933, first deals with funds and other securities under the supervision of the Secretary of the Interior belonging to Indians of the Five Civilized Tribes of one-half or more Indian blood, enrolled or unenrolled. It imposes restrictions on such funds and makes them subject to the jurisdiction of the Secretary of the Interior until April 26, 1956. The first proviso of the section deals with restricted and tax-exempt land belonging to members of the Five Civilized Tribes acquired by inheritance, devise, or gift, or by purchase with restricted funds by or for restricted Indians, and provides that such lands shall remain restricted and tax exempt while held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law.

The specific question presented is, Who are restricted Indians within the meaning of such proviso?

■ Under the Act of May 10, 1928, Indians of one-half or more Indian blood were restricted Indians and full-blood Indian heirs were restricted Indians. Under the Act of April 12, 1926, full-blood Indian heirs and devisees were restricted Indians. Hence, if Congress, in using the phrase "restricted Indians," had in mind Indians who were subject to restrictions with respect to the incumbrance or conveyance of their lands at the time the act was adopted, the phrase would include Indians of the half-blood.

In that portion of the act which precedes the first proviso, Congress imposed restrictions as to funds and securities under the supervision of the Secretary of the Interior belonging to Indians of half or more Indian blood. The source of such funds was largely lands. If it were necessary to protect the funds, it would seem equally necessary to protect the source of such funds. Hence, it is reasonable to suppose that Congress intended to restrict the lands of half-bloods or more acquired by inheritance or devise.

Furthermore, the first proviso deals with lands acquired by inheritance or devise. Allotted lands acquired through inheritance or devise by full-blood Indians were already restricted by Sec. 9 of the Act of May 27,

1908, as amended by the Act of April 12, 1926, and to the extent of 160 acres when a tax exemption certificate had issued therefor, exempt from taxation by the Act of May 10, 1928, and it was unnecessary to impose restrictions or provide for tax exemption as to full-blood Indian heirs or devisees. This indicates an intention on the part of Congress to deal with an Indian heir or devisee of less than full blood.

Moreover, the subsequent Act of February 11, 1936, 49 Stat. 1135, c. 50, 25 U.S.C.A. § 393a, is a legislative construction that the first proviso of the Act of 1933 embraces members of the Five Civilized Tribes of one-half or more Indian blood. The Act of 1936 permits "Indians of the Five Civilized Tribes * * * of one-half or more Indian blood, enrolled or unenrolled," to lease their restricted land for a specified period. Unless the first proviso covers Indians of the half-blood, there could be no unenrolled Indians of the half-blood to whom the Act of 1936 could apply, for unenrolled Indians never received allotments, the special estates created by Sec. 9 of the Act of May 27, 1908, terminated April 26, 1931, and, prior to the Act of 1933, Indian heirs of less than the full-blood, whether enrolled or unenrolled, took inherited land free from restrictions, and needed no statutory permission to lease their lands.

Finally, such has been the administrative construction of the act. See Solicitor's Opinion, 54 Interior Decisions 382, 1934, and 3 Fed.Reg. (1938) pp. 877, 884.

Counsel for defendants rely upon statements made at the hearing on the bill before a subcommittee of the Senate Committee on Indian Affairs. 72d Cong., 1st Sess.. on H. R. 8750, which ultimately became the Act of January 27, 1933. The statements consist of testimony of senators, representatives, a lawyer from the Department of the Interior, and various tribal attorneys. It may be doubted that resort can properly be had to such statements as an aid in construing the act. See Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 463, 464, footnote 8, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455; Pennsylvania R. Co. v. International Coal Co., 230 U.S. 184, 198, 199, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315. But assuming they may be considered, many other statements equally authoritative made during the hearing support the construction that the purpose of the proviso was to continue restric-

tions and tax exemptions after restricted lands had been acquired by devise, inheritance, or gift, or by purchase with restricted funds by members of the Five Civilized Tribes, enrolled or unenrolled, of one-half or more Indian blood.

The decree is affirmed.