**QUINCY v. TEXAS CO. et al.**

**No. 4101.**

United States Court of Appeals, Tenth Circuit.

Nov. 8, 1950.

Rehearing Denied Dec. 8, 1950.

Writ of Certiorari Denied Feb. 26, 1951.

Otey, all of Ardmore, Okl., W. R. Banker and A. Camp Bonds, Muskogee, Okl., were with them on the brief) for appellees.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Floyd E. Quincy, an unenrolled one-half blood Chickasaw Indian, born in 1913, inherited in 1923, the tax-exempt homestead allotment of his father, a full-blood restricted Chickasaw Indian. In 1936 and 1937, he executed certain conveyances to the land through which the appellees here claim some recorded interests.

By this suit, Quincy seeks to invalidate these conveyances on the ground that they were made in violation of the restrictions imposed by the Act of January 27, 1933, 47 Stat. 777, providing in material part that "where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance * * * by * * * restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians * * * unless the restrictions are removed in the meantime in the manner provided by law". The trial court sustained a motion to dismiss and entered judgment, from which this appeal is taken.

Construing this proviso of the act, we have said that where the entire interest of the restricted tax-exempt allotment was inherited subsequent to the effective date of the Act by an Indian of the half-blood, born after March 4, 1906, such lands remained restricted and tax-exempt as provided in the Act. Glenn v. Lewis, 10 Cir., 105 F.2d 398, 401; United States v. Watashe, 117 F.2d 947; Johnson v. United States, 10 Cir., 64 F.2d 674; see also Green v. Campbell, 187 Okl. 54, 100 P.2d 997.

But, the restrictions imposed upon the "special estate" created in an inherited tax-exempt homestead allotment, for the benefit of an Indian of this class, by Section 9 of the Act of May 27, 1908, 35 Stat. 312, 315, as amended by the Act of April 12, 1926, 44 Stat. 239, and Section

H. A. Ledbetter, Ardmore, Okl., for appellant.

B. W. Griffith, Tulsa, Okl., and Kenneth Shilling, Ardmore, Okl. (Yates A. Land, Tulsa, Okl., James C. McWilliams, Oklahoma City, Okl., Marvin Shilling, Andrew B. Riddle, E. H. Williams and George N.

2 of the Act of May 10, 1928, 45 Stat. 495, terminated on April 26, 1931, and such lands were no longer restricted lands in such heirs. Glenn v. Lewis, supra; United States v. Watashe, supra. Since neither Section 9 nor any other federal statute cited extends the special estate beyond April 26, 1931, and during the minority of an Indian heir, the operation of the statute was unaffected by appellant's minority on the effective date of the 1933 Act. Hardesty v. Gordon, 189 Okl. 677, 119 P.2d 70. And, since this Indian heir was of less than the full-blood, the lands were no longer tax-exempt. Glenn v. Lewis, supra.

 The question presented here for the first time is whether the provisions of the 1933 Act have application to inherited lands, on which restrictions had lapsed or terminated before the effective date of the Act. In other words, does the Act retroactively reimpose restrictions and tax exemption upon land after they had terminated in 1931. There can be no doubt of the power of Congress to reimpose restrictions on the Indian ward or his lands. The inquiry is whether the act can be said to have the effect of doing so. Brader v. James, 246 U.S. 88, 38 S.Ct. 285, 62 L.Ed. 591; McCurdy v. United States, 246 U.S. 263, 273, 38 S.Ct. 289, 62 L.Ed. 706; Hickey v. United States, 10 Cir., 64 F.2d 628.

The Act has been denied retroactive effect by the Supreme Court of Oklahoma. Moore v. Jefferson, 190 Okl. 67, 120 P.2d 983. The Solicitor for the Department of the Interior has likewise declined to give it retroactive application. Recognizing that retroactive operation would reimpose restrictions and "withdraw from the taxing power of the State of Oklahoma a considerable area of land", the Solicitor could find no expressed Congressional intent or purpose to change the status of the lands of this class of Indians under the prior laws by "reimposing restrictions heretofore removed * * *." He concluded that the use of the words "remain restricted and tax-exempt disclosed a plain intent on the part of Congress to preserve existing restrictions rather than to impose restrictions once removed." 54 Interior Decisions,

382, 1934. See also Sec. 45, Regulations promulgated and adopted by the Secretary of the Interior, April 27, 1938, 3 Fed.Reg., p. 877, 884.

Appellants call attention to the first part of the 1933 Act providing that "all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more Indian blood, enrolled or unenrolled, are hereby declared to be restricted * * * until April 26, 1956," and to the decisions construing this portion of the Act, to impose restrictions upon all funds in the hands of the Secretary of the Interior belonging to Indians of the Five Civilized Tribes of one-half or more Indian blood, whether restricted at the time of the passage of the Act or not. See King v. Ickes, 62 App.D.C. 83, 64 F.2d 979; Ickes v. United States, 62 App.D.C. 86, 64 F.2d 982.

It is suggested that to restrict the funds and not the lands from which they came would lead to an obviously incongruous result—one which Congress did not intend. But, in both King v. Ickes, supra, and Ickes v. United States, supra, the lands from which the funds in the hands of the Secretary were derived were concededly unrestricted. And, conversely, funds derived from restricted lands have been held to be unrestricted in the hands of the Secretary. Chisholm v. House, 10 Cir., 160 F.2d 632, 642; Bradburn v. Shell Oil Co., 10 Cir., 173 F.2d 815. It is for Congress to determine when and to what extent it shall restrict Indian lands or the proceeds therefrom. It is the function of the courts to give effect to the Congressional will within constitutional limits when ascertained.

There is, we think, a readily discernible difference in the words "now held by or which may hereafter come under the supervision of the Secretary", as employed by Congress in the first part of the Act to express its disposition to restrict the funds of Indians of the Five Civilized Tribes, and

the use of the words "restricted and tax-exempt land belonging to members of the Five Civilized Tribes * * * acquired by inheritance * * * by or for restricted Indians" to designate what Indian land shall "remain restricted and tax-exempt". The funds were "declared to be restricted", while the restricted and tax-exempt inherited lands were to "remain restricted and tax-exempt". The language used to impose restrictions upon the funds was "broad and sweeping", while the language used to restrict the land was narrow and specific. It was intended to delineate with precision a definite class of lands which Congress intended should remain restricted, that is, lands which were restricted and tax-exempt at the time of the passage of the 1933 Act.

Section 22 of the Act of April 26, 1906, 34 Stat. 137, 145, imposed restrictions upon "all conveyances" by full-blood Indian heirs, and the provisions of this Section were held to reimpose restrictions upon such lands in Brader v. James, supra; Tiger v. Western Inv. Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738. But, the Act of April 26, 1906, was a "comprehensive one". "The purpose was to substitute a new and uniform scheme controlling alienation in such cases, operating alike as to all the Civilized Tribes." Brader v. James, supra, 246 U.S. at page 95, 38 S.Ct. at page 286.

No such purpose can be gathered from the limited scope of this particular proviso of the Act. On the contrary, the prospective construction of the Act is consistent with the policy of Congress not to expand tax exemptions on Indian lands. It is consistent and in accord with the statement of the author of the Act on the floor of Congress, when he said, "This [bill] only applies to restricted and tax-exempt land. This does not increase tax-exempt land at all." 74th Congressional Record 7222, and 75th Congressional Record 8170. See also Oklahoma Tax Commission v. United States, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612. It comports with the subsequent legislative construction of the Act, specifically excluding from its scope lands which "were not restricted against alienation at the time of acquisition." H. R. 2754, Public Law 116, 79th Congress, Chapter 223.

We conclude that the Act does not operate to reimpose restrictions upon the lands in question. The judgment is

Affirmed.