# BIARD et al. v. CARLTON.

No. 34103. Sept. 9, 1952.

Rehearing Denied Dec. 16, 1952.

*251 P. 2d 485.*

H. A. Ledbetter, Ardmore, for plaintiffs in error Mary Ann Biard and Ann Biard, a minor.

J. I. Goins and Jack H. Smith, Ardmore, D. Luster Cook, U. S. Probate Atty., Ardmore, and Jess B. Harper, Talihina, for plaintiff in error Mattie Graham, now McFarland.

Curtis & Blanton, Pauls Valley, for defendant in error, J. C. Carlton.

HALLEY, V.C.J. J. C. Carlton commenced this action in the district court of Garvin county on August 30, 1937, to quiet title to 100 acres of land in that county. He named William C. Biard as defendant. This defendant died pending the action, but after he had filed an answer alleging that he owned an undivided one-half interest in the land. He left as his heirs his wife, Mary Ann Biard, and a minor child, Ann Biard, who were substituted as defendants and have appealed from the judgment rendered for plaintiff on November 5, 1948. Mattie Graham McFarland had been permitted to intervene, and will be referred to as "intervener." J. C. Carlton will be referred to as "plaintiff" and Biards as "defendants." The following facts are necessary to an understanding of the issues involved:

The land involved is a part of the homestead allotment of Simon Graham, who was a Choctaw Indian, and who died intestate in 1919. The plaintiff, J. C. Carlton, alleged that Graham left as his only heir, Irene Graham, a daughter, born after March 4, 1906. On April 27, 1931, Irene Graham conveyed an interest in the minerals in the land to Harry A. Gage, and on October 26, 1932, she conveyed to him the remaining interest. On October 28, 1932, Harry A. Gage conveyed the land to J. C. Carlton, reserving a one-half interest in the minerals. J. C. Carlton had the title examined before he made the purchase, and the title was approved by his attorney. The proof of heirship on file with the Secretary of the Indian Agency at Muskogee showed Irene Graham as the sole heir of Simon Graham, deceased. J. C. Carlton took possession of the land, spent $1,500 or $1,600 on improvements, and had paid $253.11 in taxes up to the time of the trial.

On September 20, 1934, and October 23, 1935, Mattie Graham McFarland executed two deeds covering a one-half interest in the land to William C. Biard. Mattie Graham McFarland claimed to be a daughter of Simon Graham and entitled to a one-half interest in the land. Her two deeds to Graham were recorded, and on August 19, 1937, J. C. Carlton secured a deed from Mattie Graham McFarland and her husband. The two deeds of Irene Graham to Harry A. Gage purported to convey all of the land. The one-half interest in the minerals reserved by Gage in his conveyance to J. C. Carlton is not in dispute here, and all parties agree that J. C. Carlton acquired an undivided one-half interest in the surface rights by his deed from Harry A. Gage. Only an undivided one-half interest in the surface rights and one-half of the minerals are involved in this action.

On December 19, 1938, the Probate Attorney for the Five Civilized Tribes filed a petition for Mattie Graham, alleging that she was an heir of Simon Graham and the owner of a one-half interest in the land, and that any deeds executed by her were obtained by fraud and were void for failure of consideration.

Plaintiff, J. C. Carlton, denied that Mattie Graham was an heir of Simon Graham, and contended that Irene Graham was his sole heir. He further alleged that any claim by or through Mattie Graham was barred by the fifteen-year statutes of limitation, and that any deed by her was champertous and void because she had not been in possession of the land or received any rents therefrom prior to the execution of her deeds.

The defendants Biard contended that Mattie Graham was the heir to a one-half interest in the land, and that they acquired her interest by her deeds to their predecessor, William C. Biard.

The court filed findings of fact and conclusions of law in which it found that Irene and Mattie Graham were half-sisters and were the sole heirs of Simon Graham, deceased; that the land was restricted for Irene Graham until April 26, 1931, and was tax exempt under the Act of Congress of 1928; that there were no restrictions on the land when the conveyances were made to J. C. Carlton and William C. Biard; that J. C. Carlton took immediate possession and made valuable improvements upon the land, and that his deed from Irene Graham, together with his possession of and claim of the entire interest in the land, constituted an ouster of Mattie Graham; that the deeds of Mattie Graham to William C. Biard were without adequate consideration and void, and that William C. Biard and his successors in interest failed to carry out their agreement of purchase with her; that the deed of Mattie Graham to J. C. Carlton was not fraudulent, but was sufficient to convey whatever interest she had.

The court concluded that Mattie Graham made a valid conveyance to the plaintiff, and that the defendants and Mattie Graham had no interest in the land, but that plaintiff, J. C. Carlton, was the owner of the fee-simple title.

We shall discuss first the question of limitations and champerty. Mattie Graham obtained permission to intervene in this case and filed her petition in intervention on December 19, 1938. The plaintiff acquired his title from Harry A. Gage on October 28, 1932. Mr. Gage had obtained his title from Irene Graham on October 26, 1932. It is clear that the fifteen-year statute of limitation had not ripened into title by prescription when Mattie Graham asserted her ownership of a one-half interest in the land. In Coats v. Riley, 154 Okla. 291, 7 P. 2d 644, it was said in the fifteenth syllabus:

"The heirs of a deceased Indian take title to the property of the decedent as tenants in common, and the possession of one of them is the possession of all. The possession of one of the

heirs does not set in motion the statute of limitation as against one of the heirs not in possession."

We think it clear that the parties owning the land were tenants in common, and that the possession of the plaintiff and his predecessor in title was the possession of all.

Sec. 548, Title 21, O. S. 1951, makes a deed champertous if executed by one who has not been in possession nor received rents for one year preceding the date of the deed. The statute further provides:

"Provided, however, that the provisions of this Section shall not be construed to be a restriction or limitation upon the sale of Indian lands by the allottees or the heirs of such allottees of their inherited interests in such lands. R. L. 1910, §2260; Laws 1915, ch. 191, §1; Laws 1919, ch. 170, p. 245, 1."

Since Irene Graham and Mattie Graham were Choctaw Indians of the half-blood, they inherited the land jointly in equal shares from their father, Simon Graham, and became tenants in common. While the deeds from Mattie Graham were executed while J. C. Carlton was in full possession under deeds purporting to convey the title to all the land, she held as an Indian heir and as a tenant in common with Irene Graham and her successors.

In Coats v. Riley, supra, it is said in the seventeenth syllabus:

"Where a person has, without authority, undertaken to sell and convey the land of another person, the real owner of the land is not precluded by this wrongful act from asserting his title to the land."

In the more recent case of Wolfe v. Graham, 185 Okla. 318, 90 P. 2d 1067, it is said in the third syllabus:

"The mere possession of a tenant in common, no matter how full and complete, does not operate as an ouster of his cotenant, or amount to adverse possession as against the claim of his cotenant. There must be something to show a denial or repudiation of his cotenant's rights, or the possession will be deemed to be held in subordination to the rights of the cotenant."

In First National Bank and Trust Co. et al. v. Bohannon's Heirs et al., 199 Okla. 665, 189 P. 2d 612, it is said in the third sylllabus:

"The possession of one tenant in common of land is the possession of all and where there has been no actual ouster, a deed by the other tenant in common to a third person is not inhibited by the statute against champerty."

We conclude that Mattie Graham was a tenant in common with Irene Graham and those who claim under her, and that there was no actual ouster by the plaintiff, and that Mattie Graham could convey whatever interest she had in the land without violating the rule against champerty.

While we think that Mattie Graham had a right to execute the deeds to William C. Biard, there is ample evidence to support the finding of the court that such deeds should be declared void because based upon an inadequate consideration. We think they might also be properly set aside upon the ground of mistake. It is clear that Mattie Graham was imposed upon and misled by those who secured from her the deeds to William C. Biard.

Mattie Graham was promised $250 for her one-half interest, but was paid only $25. She testified that Mr. Erwin, who obtained the deed for Mr. Biard, agreed to assist her in recovering her interest in the land, and that she thought she was signing a contract to that effect, but later found that she had executed a deed. She testified, in part, as follows:

"A. Young Erwin came, his name was William J. Erwin.

"Q. What did he tell you? A. He brought some papers down there. I will tell you the way it happened, he said it was a contract for me to sign to recover my land, and I never thought about signing the other one and I

548

signed it and he gave me $25 and said it was a loan.

"Q. Did he say anything about any more money being due? A. No, he said it was a loan.

"Q. Did he tell you you would receive $225 more if the land was recovered? A. No."

As to the deed from Mattie Graham to J. C. Carlton in 1937, which the court held to be valid, we find that the consideration paid for that deed was only $25, while the evidence shows that at that time her interest in the land was worth $900. Mattie Graham testified, in part, in regard to that transaction as follows:

"Q. If you had been fully advised you owned fifty acres of land, or one-half of this one hundred acres of land, would you have sold this property for $25 to Mr. Carlton? A. No, I would not.

"Q. If he had advised you and told you you were the owner of one-half interest in this property as one of the heirs of Simon Graham then would you have deeded it to him for $10? A. No, I would not.

"Q. After he convinced you you had no interest, and that Irene owned it all, you signed the deed? A. Yes, sir, I believed that, he said that, and he was a school teacher."

While the value of the land has been enhanced by the improvements placed thereon by J. C. Carlton, Mattie Graham, who was convinced by Mr. Carlton that she had no interest in the land, did own a one-half interest. We find little difference between the consideration paid for the Carlton deed in 1937 and that paid for the Biard deeds at earlier dates. The grantor was an inexperienced and uneducated Indian woman who was evidently trustful and easily influenced by men with experience in dealing in land and sufficiently educated, as was Mr. Carlton, to hold the position of school teacher. We are of the opinion that the land involved here was not restricted against alienation after April 26, 1931, as is contended by the plaintiff. An examina-

tion of the Act of Congress of January 27, 1933, sec. 1, convinces us that it was not intended to restrict the land of half-blood Indians until April 26, 1956. Irene Graham was born after March 4, 1906, and the land was restricted as to her April 26, 1931, as tax exempt land under the Act of May 10, 1928. In Moore v. Jefferson, 190 Okla. 67, 120 P. 2d 983, it was said in the body of the opinion:

"This case does not fall within the rule announced in Green v. Campbell, 187 Okla. 54, 100 P. 2d 997, wherein the court, on authority of Glenn v. Lewis, 10 Cir., 105 F. 2d 398, held in effect that by reason of the provisions of Sec. 1, Act of Congress of Jan. 27, 1933, 47 Stat. 777, Indian heirs of the half blood were restricted Indians in so far as their inherited interest in tax exempt land was concerned. Here the allottee died prior to the Act of 1933. Therefore said Act does not apply."

In Floyd E. Quincy v. The Texas Company, 185 F. 2d 139, it is said:

"The 1933 statute providing that where entire interest in tract of restricted and tax exempt land belonging to members of the 5 civilized tribes is acquired by inheritance by restricted Indians, such lands shall remain restricted and tax exempt during life of and as long as held by such restricted Indian, had no application to inherited lands on which restrictions had lapsed or terminated before effective date of act. Act Jan. 27, 1933, 47 Stat. 777."

We conclude that all of the deeds executed by Mattie Graham, now McFarland, should be set aside as void because of inadequate consideration, and because they were secured by misleading statements and representations. She has offered to do equity, and the judgment of the trial court is reversed, with directions to enter judgment for the plaintiff, J. C. Carlton, for an undivided one-half interest in the land, subject to the one-half interest in the minerals owned by Harry A. Gage, and to enter judgment for Mattie Graham, now McFarland, for the remaining one-half interest. An equitable ad-

justment of rentals, taxes paid, and improvements made in good faith by J. C. Carlton should be made.

WELCH, CORN, JOHNSON, and O'NEAL, JJ., concur. GIBSON and DAVISON, JJ., dissent.

DAVISON, J. (dissenting). The facts show J. C. Carlton was not an Indian trader and that he had never before had a business transaction with an Indian. He had been a country school teacher for many years.

That at the time J. C. Carlton originally purchased the land in question he thought Irene Graham to be the sole and only heir of Simon Graham. He had the title examined by an excellent lawyer who approved the title, the examination having been based on the proof of heirship on file with the Secretary of the Indian Agency at Muskogee which showed Irene Graham to be the sole and only heir of Simon Graham, the deceased allottee. He purchased the land in good faith thinking he had fee-simple title and thereafter in good faith made lasting and valuable improvements thereon. Thereafter, when he purchased the alleged interest from Mattie Graham, now McFarland, he, in good faith, thought she never had had an interest in the land, but made the purchase for the purpose of clearing up any defect in his title.

The trial court found that "intervener and her husband sold her remaining equity, if any, to plaintiff without the exercise by him of any duress, coercion, unlawful or undue influence, or fraud, the court finds the consideration in this case to be adequate to support intervener's deed to plaintiff."

I am of the opinion that this finding of the trial court is not against the clear weight of the evidence.

Assuming that the consideration paid for the deed was inadequate, yet that alone would not be sufficient cause for a reversal of the case. Mere inadequacy of consideration, standing alone, is not sufficient to set aside a deed. Pryer et al. v. Mahoney, 179 Okla. 426, 65 P. 2d 974; Watashe v. Tiger, et al., 88 Okla. 77, 211 P. 415; Campbell v. Newman, 51 Okla. 122, 151 P. 602.

For the reasons above stated, I am of the opinion that the judgment of the trial court should be affirmed. I therefore respectfully dissent.