John D. SMITH, Plaintiff in Error,

v.

Ida B. PETTIJOHN, Defendant in Error.

No. 39265.

Supreme Court of Oklahoma.

Oct. 17, 1961.

Rehearing Denied Nov. 28, 1961.

John B. Ogden, Oklahoma City, for plaintiff in error.

Dwight Malcolm, Lawton, for defendant in error.

IRWIN, Justice.

Plaintiff commenced this action to permanently enjoin the defendant from interfering with her possession of certain real property. From a judgment in favor of the plaintiff, the defendant has perfected this appeal. The parties will be referred to as they appeared in the trial court.

### Pleadings

Plaintiff alleged that she is now and has been for more than thirty years the owner of lot 7, block 24, Waldman Addition to the City of Lawton, Oklahoma, and all the premises known as 911 South 11th street in the City of Lawton, and enclosed by a net wire fence. That the defendant entered upon her property and removed a fence enclosing the north side of her property and threatens to construct a new fence which will include a portion of plaintiff's property and exclude her from the use and possession thereof. That the fence so removed has marked the north boundary of her property for more

than thirty-five years and the defendant has no right, title or interest therein; that she and her predecessors in title have been in the uninterrupted, open, adverse, continuous, notorious, actual, hostile, visible and exclusive possession of the property for more than fifteen years.

Defendant's answer was in the form of a general denial and by way of cross-petition alleged he is the owner of the property located between the fence and the true line running between lots 7 and 8, and that plaintiff has no right, title or interest therein and that he be adjudged the owner thereof.

### Evidence

Plaintiff testified her father purchased lot 7 in 1923, and he and his family moved thereon in 1924; that at the time the lot was purchased a fence enclosed the purchased property; that the fence is on the north side of the lot and separates lots 7 and 8 and has not been moved since the property was purchased, but has been maintained at all times along the same line; that her father deeded the property to her and her two sisters in 1925 but her two sisters never claimed any interest therein and in 1950 deeded whatever interest they may have had to her; that she repaired the fence in 1934 and nothing has been done to it since then; that she has honeysuckle and roses growing on the fence; that about five years prior to the questioning of her title by defendant, she had a sewer line laid along the north side of her house and within the disputed area; that the defendant was present when the ditch was dug and the pipe installed and made no objection; that defendant's mother, who deeded the property to him in 1956, never made any claim to the property in dispute; that a few days before this action was commenced the defendant demanded that she tear down the fence and notified her if she did not do so, he would take it down and on July 28, 1959 he did tear it down.

The plaintiff produced the testimony of three persons who had knowledge of the existence of the fence; one had such knowledge for 37 years, one 26 years and one 23 years and all testified that the fence had never been moved between the time first observed and the time it was removed in 1959.

The defendant's mother testified she and her husband bought lots 8 and 9 in 1920; that the fence on the south side (the north side of plaintiff's property) was there and the grantor told them the south fence was about eighteen inches or two feet north of where it should be. That she repaired the fence in 1922 and in 1927 she built a new fence along the same line and in 1934 the plaintiff tore that fence down and built another one on the same location; that when plaintiff built the new fence in 1934 she told plaintiff the fence was not on the true line and that it included a portion of lot 8; that plaintiff denied the fence was not on the true line between lots 7 and 8; that she had the property surveyed in 1943 and placed a tie on the correct property line which was south of the fence. However, this tie was placed outside the enclosure to the east of the property line and the tie stayed there until about 1950. The witness did not testify that she served any notice on the plaintiff of the survey to be made; she did not testify she told plaintiff the survey had been made or that any tie had been set showing the true line between lots 7 and 8. That she claimed the portion south of the fence to the true line of lot 7, had always claimed it and always told plaintiff she claimed it.

Defendant testified his mother deeded the property to him in 1956; that in 1959 he contracted to have his property fenced but the people with whom he was contracting suggested he have a survey made so the fence could be put on the true dividing line. That he had always known the fence enclosed part of lot 8 and the survey made in 1959 definitely disclosed the true north line of lot 7 and the south line of lot 8. Defendant introduced army discharge showing service from February, 1941, to October, 1945.

The plaintiff in rebuttal testified she knew nothing of any surveys being made before

the one in 1959; that she knew nothing about any stakes being set and she had never seen any stakes, pins or ties and that the property line was never questioned until the survey in 1959.

### Contentions

The defendant contends: 1. That plaintiff has not had possession of the disputed property fifteen years; that she did not become the owner of lot 7 in its entirety until 1950; that if her possession ante-dated 1950, it could not begin prior to October, 1945, the date of his discharge from the armed forces. 2. That plaintiff had no intention of establishing a boundary different to that established by the recorded plat, and though honestly believing the fence was on the true boundary line, she could not acquire rights under a mistaken belief and such does not establish prescriptive rights.

### Conclusions

■ In considering the first contention that the plaintiff had not owned lot 7 for fifteen years, the record discloses that she became the owner of the legal title in its entirety in 1950. However, lot 7 was deeded to the plaintiff and her sisters in 1925 and they were thereafter tenants in common. The possession of the plaintiff was the possession of all the tenants in common and such possession continued thereafter and became the sole possession of the plaintiff upon the execution and delivery of the deed from the sisters in 1950. Biard v. Carlton, 207 Okl. 545, 251 P.2d 485; Bader v. Bader, 207 Okl. 683, 252 P.2d 427. And where privity exists between successive occupants under color of title, successive periods of occupation may be united to each other to make up period required to obtain title by adverse possession. Buckner v. Russell, Okl., 331 P.2d 401; City National Bank of Duncan v. Soderberg, 171 Okl. 369, 43 P.2d 495; Ellis v. Williams, Okl., 297 P.2d 916; Oliphant v. Dalton, Okl., 304 P.2d 300.

■ In this connection it is the theory of the defendant that he was in the army from February, 1941, to October, 1945; that this broke the continuity of the plaintiff's possession and tolled the statute of limitation for more than four years, and cites Sec. 205 of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.Appendix, § 525. While it is true the defendant was in the Armed Services during that period, he was not the owner of lot 8 and did not become the owner thereof until the year of 1956. He had no claim of right, title or interest in and to the property prior to or during his period of service and the Soldiers' and Sailors' Civil Relief Act would not be applicable.

The principal contention of the defendant is that plaintiff had no intention of establishing a different boundary line than that fixed by the plat; that all she owned was lot 7 and consequently, if she honestly believed that the fence was on the boundary line and was mistaken, then she could not acquire rights under such mistaken belief that would give rise to a prescriptive right. In support of this theory the defendant cites White v. Saling, 185 Okl. 46, 89 P.2d 754. While this may have been the law at one time, the case of Johnson v. Whelan, 186 Okl. 511, 98 P.2d 1103, specifically overruled White v. Saling and all other decisions in conflict with the rule. The new rule laid down in Johnson v. Whelan, supra, found in paragraph 3 of the syllabus, is as follows:

"Where the owner of a town lot, in ignorance of the true boundary between his lot and the adjoining lot of another party, and under the mistaken belief that it is his property, encroaches on a portion of the adjoining lot and erects a part of a structure thereon, and occupies such portion of said lot and maintains such structure thereon, openly, peaceably, and exclusively for more than 15 years, he acquires title to such portion of the adjoining lot by prescription, sufficient against all. Sec. 11729, O.S.1931, 60 Okl.St.Ann. § 333."

■ The later case of Walthers v. Tanner, 204 Okl. 598, 233 P.2d 303, 304, lays

down the rule in language more befitting the facts herein. Paragraph 1 of the syllabus is as follows:

"When a person builds a fence on what he thinks is the boundary line between his and his neighbor's land and cultivates the land enclosed by the fence and occupies the land actually, openly, notoriously, exclusively, and hostilely for fifteen years, the fence will be adjudged to be the boundary between the properties."

See also Buckner v. Russell, supra; Bennett v. Grother, Okl., 280 P.2d 1015; Wilson v. Moore, Okl., 335 P.2d 1085; and Moore v. Chapman, Okl., 344 P.2d 1100.

After carefully reviewing the record and the evidence contained therein, we cannot say the judgment of the trial court is against the clear weight of the evidence or contrary to law and the judgment is therefore affirmed.