**BROWN et al. v. STUFFLEBEAN et al.**

No. 4128.

United States Court of Appeals
Tenth Circuit.

Feb. 14, 1951.

Rehearing Denied March 16, 1951.

David A. Kline and H. M. Redwine, Oklahoma City, Okl., for appellants.

Alfred Stevenson, Holdenville, Okl. (Sullivan G. Ashby, Ardmore, Okl., C. H. Bowie, Walter D. Hart and Haskell Paul, Pauls Valley, Okl., Forrest M. Darrough, Walter Davison and A. L. Deaton, Tulsa, Okl., Paul Dudley and Fred W. Dunlevy, Oklahoma City, Okl., on the brief), for appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court of the Eastern District of Oklahoma, sustaining the challenged validity of certain deeds of conveyance of inherited Indian land by the Indian heirs of a full-blood Choctaw Indian.

The full-blood heirs seek to invalidate and set aside their conveyances of their respective interests in the inherited land on the grounds, inter alia, that they were not executed in compliance with Section 8 of the Act of January 27, 1933, 47 Stat. 777, which provides in material part that "no conveyance of any interest in land of any full-blood Indian heir shall be valid unless approved in open court after notice in accordance with the rules of procedure in probate matters adopted by the Supreme Court of Oklahoma in June of 1914 * * *." The half-blood heirs seek to avoid their conveyances to their respective interests in the inherited land on the ground, inter alia, that the deeds were not approved by the Secretary of the Interior in accordance with Section 1 of the 1933 Act, supra, which provides in material part that "where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance * * * by * * * restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians * * * unless the restrictions are removed in the meantime in the manner provided by law."

The trial court sustained its jurisdiction over the suit as one arising out of the laws of the United States and involving the requisite amount in controversy.

While the object of the suit is to cancel or nullify deeds of conveyance, it has its genesis in the Act of Congress relating to the alienability of Indian lands. The right asserted is a federally created right, and a federal statute is invoked as a basis for the relief sought. The court therefore had jurisdiction over the subject matter and the parties. See Board of County Commissioners of Creek County v. Seber, 10 Cir., 130 F.2d 663, affirmed 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194.

A chronological statement of the facts is essential to a proper understanding of the questions involved. Sealy James Murphy, a full-blood Choctaw Indian, died intestate on January 28, 1940, seized of 100 acres of allotted and restricted land located in Garvin County, Oklahoma. She left surviving, W. O. Murphy, a non-Indian husband, Selina Brown, Amanda Smith, Emily Anderson and Will Paul James, all full-blood Choctaw Indian children of a previous marriage, and two grandchildren, Cecil James and Leila Mae Andrews, half-blood children of her deceased full-blood Indian son by the same previous marriage. The husband and each of the four living children inherited an undivided one-sixth interest, and each of the grandchildren an undivided one-twelfth interest in the land.

The trial court found from conflicting evidence that Amanda Smith, her non-Indian husband Harry Smith, and Selina Brown, made arrangements with J. H. Stufflebean, a funeral director at Pauls Valley, Oklahoma, to conduct the funeral for the sum of $328.00, in payment of which the Smiths and Browns agreed to convey to him title to all the inherited land.

On December 7, 1940, the surviving non-Indian husband executed a warranty deed conveying his undivided interest in the land to Harry Smith, husband of Amanda Smith, and on March 20, 1941, Smith, joined by his wife, gave Stufflebean a warranty deed covering this interest, at which time Stufflebean paid Smith the sum of $115.00 to reimburse him for what he stated he had paid Murphy for the conveyance. The parties agreed in the trial court that Stufflebean became the owner of this undivided one-sixth interest. Murphy is not a party to the suit, and this interest is not involved.

In the early part of 1943, the other Indian heirs not having conveyed the land in pursuance of the agreement, Stufflebean employed Haskell Paul, an attorney, for the admitted purpose of acquiring or perfecting title to the entire allotment of Sealy James Murphy. Paul filed a creditor's petition on behalf of Stufflebean for the probate of the Estate, setting up his claim for the burial expenses. According to the findings of the court, this was done on the theory that Stufflebean could acquire good title through the administrator's sale. Notice was given to the United States probate attorney of the hearing on May 4, 1943. After Mr. Cook, United States Probate Attorney, convinced Paul that the probate proceedings would not be recognized by the Department of the Interior, the proceedings were abandoned, but on the same day, May 4, 1943, Amanda Smith and Selina Brown executed to Paul, as attorney for Stufflebean, warranty deeds covering their respective undivided interests in their mother's allotment. The trial court specifically found that these deeds were given pursuant to the agreement made at the time of the burial. No additional consideration was given to either of the grantors at the time the deeds were given. The deeds were held

by Paul, and no credit was made or entered on the account of Stufflebean for the funeral charges.

On September 13, 1943 the appellants, Cecil James and Leila Mae Andrews, half-blood grandchildren, executed and delivered to Paul, as attorney and agent for Stufflebean, a warranty deed covering their respective interests in their grandmother's allotment in pursuance of a letter of the same date, signed by both Paul and Stufflebean, acknowledging the execution of the deed, and reciting that an action would be filed within the next few days to sell the interest of Amanda Smith and Selina Brown in the inherited land; that the United States probate attorney was required by law to be notified of the action, and would have the land appraised for value. The letter went on to recite that the value established in this proposed action would be used to determine the consideration for the conveyance of their respective interests to Stufflebean; that in the event their interest was determined to be of greater value than their proportionate obligation for the funeral bill, Stufflebean would pay in cash the difference between such value and their respective shares, and in the event the land was appraised at less than the funeral bill, Stufflebean would accept the deed in full satisfaction as far as they were concerned.

On October 19, 1943, Amanda Smith signed and verified a petition to the County Court of Garvin County, for approval of her deed previously executed to Stufflebean on May 4, 1943. On November 20, 1944, Selina Brown signed and verified a petition to the County Court of Garvin County for the approval of her deed, also executed and delivered to Stufflebean on May 4, 1943. On October 28, 1944, Will Paul James executed and delivered to Paul a warranty deed to his interest in the land. At that time, Paul gave James $50.00, and a day or so later, gave him an additional $10.00. This gave Stufflebean warranty deeds to all of the respective interests of the heirs to the land, except that of the daughter, Emily Anderson.

None of the deeds were recorded, nor were the petitions for approval submitted to the County Court at that time. But, accord-

ing to the findings of the trial court, it was the opinion of the Probate Division of the Office of the Superintendent for the Five Civilized Tribes and the Department of the Interior, that the land did not remain restricted under Section 1 of the Act of January 27, 1933, and according to the trial court, the same officers were of the opinion that county court approval of the deeds given by the full-blood Indian heirs was not requisite to their validity, and that Paul, as attorney for Stufflebean, was so advised by Mr. Cook, Probate Attorney with direct supervision of Indian conveyances in Garvin County. Stufflebean went into possession of the land about January 1, 1945, and collected the rents for 1945 and 1946, but paid no taxes.

When in May 1946, Stufflebean learned that two men were attempting to purchase Amanda Smith's interest in the allotment on the theory that his deed was not good, he secured another deed dated May 23, 1946, for which he paid $30.00 per acre, or $500.-00, less her proportionate part of the funeral charges. On the same date, Paul quitclaimed Will Paul James' interest to Stufflebean. On the previous day, the 22nd, Stufflebean acquired a new deed from Selina Brown covering her undivided interest, and also a deed from Emily Anderson, for the same consideration, to-wit, $30.00 per acre. On the 24th of May, 1946, Stufflebean recorded all of the deeds covering the respective interests, including the one from Cecil James and Leila Mae Andrews. The testimony is that about that time, Paul mailed Stufflebean's checks to Cecil James and Leila Mae Andrews for their interests, based upon the amount paid the other heirs. The checks were returned, but James and Andrews later came to Pauls Valley and on demand, Stufflebean paid them for their respective deeds, based upon the consideration heretofore paid to Smith and Brown.

On June 4, 1946, Will Paul James executed a deed to his interest in the land to Stufflebean for the sum of $500.00, less his pro rata part of the funeral bill, and also executed a petition to the probate court for approval of the same. At the same time, he was paid the sum of $35.00 for his expenses incident to coming to Pauls Valley for the hearing on the petition.

On the following September 16, 1946, Stufflebean gave an oil and gas lease to J. C. Todd covering all of the land for $35.00 per acre, with a letter of assurance that all title requirements would be met. Todd assigned the lease to the Carter Oil Company for $110.00 per acre, subject to the approval of title, and Carter required the approval of the deeds of the full-blood Indian heirs by the County Court of Garvin County.

Accordingly, notice of hearing the petitions for approval of the deeds of Amanda Smith and Selina Brown were set for hearing on probate day, November 1946, and notice of the hearing was served upon the Probate Attorney, Cook. The hearings were continued from November to December, from December to January, and January to February 4, 1947, on which date Selina Brown appeared and testified in support of her petition for approval. The Probate Attorney was present and advised the County Court that the Department had appraised the value of the land at $50.00 per acre. He further advised the Court that he did not consider the approvals necessary to the validity of the deeds; that it would be satisfactory with him for the court to hear the petitions of the other heirs in his absence, and to approve the same, provided that all of the heirs should appear at the hearings, give their testimony, and receive at least the same consideration that Selina Brown had received. Amanda Smith did not appear on February 4, and her petition was continued to the 5th, at which time she appeared and testified in support of her petition for approval.

When Will Paul James failed to appear on the date set for hearing on his petition for approval of his deed, Walter L. Hart, an attorney at Pauls Valley, and Stufflebean contacted him in Marlow, Oklahoma, and after negotiations he agreed to appear in support of his petition for approval for an additional $300.00. He did appear on March 14, 1947, testified in open court, requesting the court to approve his deed, and was paid the additional consideration at that time. After approval of the Will Paul

James deed for the additional consideration, he wrote his sister, Emily Anderson, then residing in the State of California, advising her that she could get the same additional consideration if she would appear in court in support of her petition for approval. In June 1947, Emily Anderson and her non-Indian husband went to the office of Hart and advised him that she had heretofore executed a deed and petition for approval to Stufflebean. Hart, being interested in the land through Stufflebean, obtained this petition from the office of Paul, and went with Emily Anderson and her husband to the Office of the County Judge of Garvin County, who took her testimony to the effect that she had signed the deed, and requested the court to approve the same. The court approved it and the additional consideration of $300.00 was paid in open court.

The trial court specifically found that each full-blood heir and each half-blood heir executed the deed to his or her interest in the land for the purpose of carrying out the agreement of January 28, 1940, for the burial of Sealy James Murphy, and for the additional consideration that was agreed upon at the time each of the deeds was delivered and approved.

■ The deeds are first said to be irreparably void because the oral agreement to execute them was within the statute of frauds and void; that this being so, the County Court could not acquire jurisdiction to approve such void deeds; that the Curative Act of August 4, 1947, 61 Stat. 731 (presently to be noted) could not cure such lack of jurisdiction. The short and certain answer is that while the oral agreement was unenforceable, it was not void to the extent that it was incapable of being lawfully executed, as in Oates v. Freeman, 57 Okl. 449, 157 P. 74. It was executed by the written deeds of conveyance, the validity of which are in issue here. The deeds are not void simply because the oral agreement to execute them was within the statute of frauds. See Holland v. Ross, 189 Okl. 428, 117 P.2d 798.

The respective deeds of the full-blood heirs are said to be void because not approved by the County Court in accordance with Rule 10 of the Supreme Court of Oklahoma, the procedural requirements of which are said to be prerequisite to the validity of approval proceedings under Section 8 of the 1933 Act.

Conceding arguendo that all of the requirements of Rule 10 are made applicable by Section 8 of the 1933 Act, and conceding the truth of all of the charges leveled at the manner and form of the approval proceedings, Section 9 of the Act of August 4, 1947, 61 Stat. 731, 734, pertinently provides that "all conveyances, including oil and gas or mineral leases, by Indians of the Five Civilized Tribes in Oklahoma of lands acquired by inheritance * * * after the effective date of the Act of January 27, 1933, and prior to the effective date of this Act, that were approved * * * by a county court in Oklahoma * * * are hereby validated and confirmed: Provided, That if any such conveyance is subject to attack upon grounds other than sufficiency of approval or lack of approval thereof, such conveyance shall not be affected by this Act."

■ The Act could not constitutionally, nor did it purport to cure want of authority to act or to validate or infuse life into utterly void proceedings. See Goddard v. Frazier, 10 Cir., 156 F.2d 938. But here, the County Court of Garvin County was authorized to approve the deeds when its jurisdiction was invoked. The petitions for approval were filed by the Indians; a date for hearing was set; the probate attorney appeared and gave the Court the Department's appraised value; the testimony of each Indian was taken and transcribed; and in each case, the Court entered an order approving the same. Any deviation from the literal requirements of the procedural rule went to the sufficiency of the approval. It did not deprive the court of jurisdiction to act, although absent the curative provisions, any of the claimed defects might have operated to void the conveyances. It was within the competency of Congress, in the exercise of its plenary power over Indian affairs, to impose, continue, remove, qualify or reimpose restrictions with respect to these conveyances, and to prescribe or dis-

pense with the procedural details incident to the exercise of that power. McElroy v. Pegg, 10 Cir., 167 F.2d 668; Wolfe v. Phillips, 10 Cir., 172 F.2d 481; Goddard v. Frazier, 10 Cir., 156 F.2d 938. The Indians had no vested or constitutional right to county court approval as a condition to the validity of their conveyances. Cf. Goddard v. Frazier, supra. Congress was therefore competent to forgive irregularities and confirm proceedings, without which the proceedings would be void. We conclude that the deeds are not invalid for failure to comply with Section 8 of the Act of 1933.

As a separate ground of attack, it is alleged and asserted that these deeds of conveyance are void for fraud in their procurement and for extrinsic fraud upon the court which approved them. It is contended that the deeds were procured and approved in furtherance of a scheme to cheat and defraud the Indian grantees. From the proviso in Section 9 of the 1947 Act, it is manifestly plain that Congress did not intend to confirm or validate conveyances which are "subject to attack upon grounds other than sufficiency of approval or lack of approval * * *." It did not intend to condone fraud in the procurement of the deeds, or to confirm titles based upon approvals which would otherwise be void for extrinsic fraud upon the court.

The conveyances, as approved by the orders of the County Court, are "subject to attack" for fraud in their procurement. See Dill v. Stevens, 141 Okl. 24, 284 P. 60; Bradburn v. McIntosh, 10 Cir., 159 F.2d 925; Freeman on Judgments, Sections 331 and 1233. But a mere allegation of fraud does not vitiate the deeds or void the orders of approval. The County Court had jurisdiction to approve the deeds, and its orders thereon "are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded those of other courts of general jurisdiction." Bradburn v. McIntosh, supra, 159 F.2d at page 930. Having alleged a fraudulent scheme, it was incumbent upon the appellants to prove it by competent and convincing evidence.

The trial court specifically found that no fraudulent scheme was conceived and no conspiracy entered into by Stufflebean and his agents, and that no fraud was practiced by them on any of the appellants or the County Court of Garvin County in connection with the approval of the deeds in question. The appellants have the further burden of showing that this finding and conclusion are clearly erroneous.

In support of their allegations of fraud, the appellants point to the fact that Haskell Paul, while representing Stufflebean in the approval proceedings, also appeared as attorney of record for Selina Brown; that attorney Hart appeared for Emily Anderson as a favor to Paul; and that at the same time, Paul was or had been attorney of record for Cecil James and Leila Mae Andrews in another matter. Our attention is called to the fact that each of the deeds of conveyance was filed of record before the petitions for approval were presented to the Court in violation of applicable rules; that the petitions for approval of Amanda Smith, Selina Brown and Will Paul James were materially altered without the knowledge or consent of the Indians after they were signed and before they were presented to the court; and that no petition for approval of the Emily Anderson deed or notice of the hearing was filed in the County Court. Then it is suggested that Stufflebean concealed from the Indians and the County Court the fact that he had leased the land for oil and gas in September 1946 for $35.00 per acre, and that in February 1947, before the deeds were finally approved, the lessee had assigned the lease to the Carter Oil Company for $110.00 per acre; that when witnesses testified at the approval hearings to the effect that the value of the land was from $15.00 to $30.00 per acre, and that there were no oil activities near, they knew of the lease and its assignment to the Carter Oil Company, and that drilling operations in this vicinity gave the land an actual value of at least $100.00 per acre. It is said that these facts show unequivocally that the consideration paid to the Indians for their conveyances was grossly inadequate,

and that this, coupled with the manner of approval, proves the fraudulent scheme.

The trial court conclusively found that Haskell Paul acted at all times only as attorney for J. H. Stufflebean; that throughout all of the negotiations and hearings, all of the Indian heirs knew that he represented Stufflebean, and that at no time herein did the relationship of attorney and client exist between Paul and Cecil James and Leila Mae Andrews. The court concluded that Paul's appearance of record for the Indians at the approval proceedings was not fraudulent or deceptive, and we agree.

The Indians were represented by the Probate Attorney statutorily charged with the duty of appearing for and representing their interest in the approval proceedings. The record shows that the Indians knew of this relationship and that they were not deceived by Paul or Hart's participation in the proceedings.

Concerning the alleged alteration of the petitions for approval, the trial court specifically found that at the time Amanda Smith gave her last deed to Stufflebean on May 24, 1946, it was agreed between her and Paul that the petition for approval which had been signed by her on May 4, 1943, might be changed to apply to the latter deed, and that it was changed accordingly. The court specifically further found that when Selina Brown gave her second deed dated May 22, 1946, it was agreed between her and Paul that the petition for approval of the previous deed of May 4, 1943, might be used as the petition for approval of the latter deed, and that it was so changed. With respect to the Will Paul James petition for approval, the trial court found that it had erroneously recited the execution of the deed on May 4, 1945, to J. H. Stufflebean instead of reciting that the deed was executed to Haskell Paul as attorney for Stufflebean on October 28, 1944. The court found that Paul took the deed from Will Paul James as attorney for Stufflebean, and that James knew at the time he signed the petition for approval that Paul was holding the title to the land as attorney and agent for Stufflebean. The petition for approval of Emily Anderson's deed could not be found, but the trial court found that she did execute a petition for approval at the time she executed the deed; that attorney Hart obtained this petition from the office of Paul, and went to the County Court with Emily Anderson and her husband, where the County Judge took her testimony to the effect that she had signed the petition and deed and requested the Court to approve the same; and that upon the payment of an additional $300.00 in open court, the deed was approved.

On the question of value, the trial court found that at the time of the oral agreement to convey the land in consideration of the burial expenses, it was of little or no value, and that nearby lands had been sold at about that time for taxes. The evidence does not show that the land had any value for oil and gas when the original deeds and petitions for approval were executed in 1943 and 1944. Apparently, it was not until 1946 that anyone expressed any interest in leasing the land for oil and gas. In any event, it was after Stufflebean went into possession of the land in 1945 that other persons attempted to purchase Amanda Smith's interest for $30.00 per acre. The trial court found from the evidence that while there had been much development for oil and gas in Garvin County prior to the execution of the deeds to Stufflebean and their approval by the County Court, the land had not been considered to be upon any known geological structure; that it was not until the early part of 1947, when a well was completed in this vicinity, that oil men were led to believe that this land might be on a "shoreline" structure; that the structure was irregular and the value of the land for oil and gas uncertain. Hart, an experienced oil man of Pauls Valley, acted for Todd in the negotiation of the lease from Stufflebean, and he had the privilege of either accepting a commission or taking an interest in the lease for his services. He chose to take the cash commission, because, according to the trial court's findings, he thought Todd was paying more than the lease was worth. Todd was an independent broker, and was not an agent of the Carter Oil Company in the acquisition of the lease from Stufflebean. From all of the

evidence, the trial court was convinced that at the time the witnesses testified in the County Court concerning the value of the land for oil and gas, they were testifying truthfully and not concealing any of the facts known to them. The trial court obviously took into consideration what is generally known in the oil country, that the value of lands for oil and gas fluctuate with the fortunes of the drill stem.

■ In arriving at its conclusions, the court took note of the fact that each of the Indian heirs spoke, read and understood the English language and was above the average intelligence; that the three daughters were married to white men who signed the deeds with them and understood the conditions under which they were given, and the consideration to be received therefor; and at the time of the payment of the consideration and approval of the deeds, they were all satisfied after having negotiated for more than the originally agreed consideration. The court's conclusions are not clearly erroneous and they must stand.

Apart from the general allegations and proof of fraud, the appellants complain of the manner and circumstances under which Haskell Paul obtained the warranty deed from Will Paul James on October 28, 1944, and the subsequent facts leading up to the approval of the deed. It is said that the deed was taken to secure a loan of $60.00, which James subsequently attempted to repay; that Paul refused to accept payment for the deed, and instead quitclaimed the same to Stufflebean in May 1946. Suffice it to say that regardless of the circumstances under which the original deed was given, the evidence, credited by the trial court, shows that Paul told Probate Attorney Cook that he would return the deed upon the repayment of the $60.00. The evidence does not show that James ever offered to pay this sum. On the contrary, it shows that on June 4, 1946, after a conference with Paul and Stufflebean, James agreed to sell his undivided one-sixth interest for $30.00 per acre, or $500.00, less his pro rata share of the funeral bill, plus $35.00 expenses incident to the approval proceedings; that

when he failed to appear on the date set for approval, he was again contacted and finally did appear on March 14, 1947, testified in open court, requested the approval of the deed, and received an additional consideration of $300.00. The evidence shows that he was a high school graduate with one year in college, had held a responsible job with an oil company, and had worked for three years for the Superintendent of the Five Civilized Tribes. From the evidence, it is clear that he was fully aware of all of his rights, and that he asserted all of them. The trial court very properly concluded that he was not misled, deceived or defrauded.

Complaint is also made of the failure of the trial court to find that Stufflebean perpetrated fraud on the half-blood Indian heirs, Cecil James and Leila Mae Andrews, when he obtained deeds under the agreement (heretofore set out) to pay therefor in accordance with the appraised value of the Selina Brown and Amanda Smith interests. This agreement is said to create a confidential relationship between Stufflebean and the Indians, and to bind him to deal with them in the utmost good faith and fidelity. It is suggested that although the Government's appraisal of the land indicated a value of from $105.00 to $140.00 per acre, the Indians were not informed of the appraisal or paid in accordance therewith. In the first place, the Government's appraisal did not indicate any such value, and in the second place, the evidence shows that they received $30.00 per acre, the same amount paid to Selina Brown and Amanda Smith, and that the same was paid to them upon their request. The trial court's holding that they received full consideration for their inherited interest in accordance with their agreement is not clearly erroneous and it is conclusive.

■ But, it is contended as a matter of law that the deeds of these half-blood Indians were void because not approved either by the Secretary of the Interior or the County Court under Section 1 of the 1933 Act, supra. The conclusive answer to this point is that Section 1 is applicable only "where the entire interest" of restricted and tax-exempt land is inherited by restricted

356

Indians. The Section has been consistently so construed in the Eastern District of Oklahoma. Kirby v. Parker, D.C., 58 F. Supp. 309. While cases from this Court construing Section 1 have not reached the precise point, see Glenn v. Lewis, 10 Cir., 105 F.2d 398; United States v. Watashe, 10 Cir., 117 F.2d 947; Johnson v. United States, 10 Cir., 64 F.2d 674; Quincy v. The Texas Co., 10 Cir., 185 F.2d 139, we think the language of the statute too plain for mistake. The Act of August 4, 1947, 61 Stat. 731, prescribes a wholly different method for the alienation of lands of this character by Indians of one-half or more of Indian blood, but it is not retroactive and not a construction of the 1933 Act. Since the entire interest in the restricted and tax-exempt land was not inherited by restricted Indians, the statute is inapplicable.

The judgment of the trial court is affirmed.