**MURPHY v. WALKUP et al.**

No. 35073.

Supreme Court of Oklahoma.

April 14, 1953.

As Corrected June 29, 1953.

Rehearing Denied June 30, 1953.

924

Coy A. Mowdy, Turner M. King and Carloss Wadlington, Ada, for plaintiff in error.

Paul & McPheron, Durant, for Ohio Oil Co. and J. B. Shaw.

H. M. Shirley, Coalgate, for H. C. Walkup, Patsy Greenan, Jr., and E. F. Courtney.

BLACKBIRD, Justice.

This action was brought by plaintiff in error, hereinafter referred to as plaintiff, to cancel certain deeds to his inherited interest in his mother's Indian allotments in Coal County, Oklahoma, executed while he was allegedly a minor. He is said to be the youngest of the four sons of Ed G. W. Murphy, a seven-eighths Choctaw, and Annie Murphy, nee Lawrence, a three-fourths blood Chickasaw who died intestate in 1930. Her homestead allotment as a member of said tribe included the S½ of SW¼ of Section 27, and her surplus allotment included Lots 1 and 2, in Section 5, and lands in the NW¼ of Section 34, all in Township 3 North, Range 11 East.

In June, 1943, H. C. Walkup, a renter of the land in Section 34, acquired an undivided one-third interest in that land, together with the tract in Section 27, after it had descended to said deceased allottee's husband, and thereafter began attempting to acquire the other inherited interests. Of these deeds Walkup obtained from Annie Murphy's heirs, the last—the one from the plaintiff and his brother, James,—was executed August 17, 1945. This transaction was accomplished by plaintiff's father contacting Walkup in Coalgate and returning to his home in Wilburton, Oklahoma (where plaintiff was attending Jones Academy), and getting plaintiff's execution and returning with the deed to Coal County where the father then received the consideration from Walkup and thereafter transmitted said money to those two sons. Thus, it appears that Walkup, the grantee, had no direct personal contact with plaintiff at that time.

Early the next year, Walkup instituted Cause No. 8789, in the District Court of Coal County to quiet his title to the interests purchased as above indicated. In his petition, he alleged, among other things, that more than 3 years had elapsed since Annie Murphy's death without there having been a determination of her heirship and he named as defendants, the plaintiff herein, his father, Ed G. W. Murhpy, and his brothers, Emanuel and James, "if they be living and if they or any of them be dead," the unknown heirs, executors, administrators, etc., "of such of them as may be dead" together with the unknown heirs, executors, administrators, etc., of the deceased mother-allottee "Annie Murphy nee Lawrence, Chickasaw minor by blood, Roll No. 277", and a deceased son, Floyd Murphy.

After the filing of this petition, Walkup's original attorney, Euel Moore of Coalgate, caused notice of the pendency of said action to be issued and served upon the Superintendent of the Five Civilized Tribes, and then retired from the case apparently on account of the illness which preceded his death. No further proceedings were taken in the case until more than

two years later, after Walkup employed Roy Paul, a Durant attorney, to succeed Moore. Thereafter the plaintiff, by express representations, induced his attorney Paul to obtain service on the defendants by publication; and, on July 15, 1948, judgment was entered determining Annie Murphy's heirs and quieting title to the land in Walkup.

During the pendency of the suit above described, Patsy Greenan, Jr., who had previously obtained a deed to their interests in the Section 5 land from plaintiff's mother, father and two living brothers, Emanuel and James, obtained a deed from plaintiff covering his interest in the same land. This deed was dated August 22, 1946.

Thereafter, in 1949, on June 1st and June 21st, respectively, J. B. Shaw acquired from Walkup and his wife a portion of the mineral rights in the Sections 27 and 34 land, and The Ohio Oil Company acquired by mesne conveyances and/or assignments, unnecessary to describe, an oil and gas lease on the land in Section 34, from Walkup and one E. F. Courtney, among others.

Apparently some question then arose concerning Walkup's title and he obtained from plaintiff, again through his father and for an additional consideration, what is referred to in the record as a "ratification" and "curity" quitclaim deed, dated June 24, 1949.

Thereafter, on November 25, 1949, plaintiff instituted the present action. All of the above-named grantees and assignees, and others unnecessary here to mention, were eventually named defendants in the action and will hereinafter be referred to as such, except when mentioned by their proper names. In his petition, plaintiff alleged that the deeds he had previously given were void on the principal grounds that the land was restricted against alienation and he was a minor at the time he executed them. With reference to the latter subject, he alleged that he was born on June 26, 1926, and he expressly disaffirmed these deeds. In this connection, he averred that if he was required to tender or return the consideration given him for the deeds, he was entitled to an accounting of the rents and royalties from said land and to have said consideration set off or credited against the amount shown to be due him by such accounting.

Thereafter, on May 19, 1950, plaintiff filed an amended petition alleging, among other things, that he was born June 26, in 1928, instead of 1926, as alleged in his original petition. Also in this pleading he, for the first time, attacked the judgment rendered against him in July, 1948, in Cause No. 8789, hereinbefore described, as void for want of jurisdiction as he had no notice of the action and said judgment was rendered on purported service by publication induced by and based upon a false and fraudulent affidavit to obtain it and a false Affidavit to Excuse Mailing of said publication notice. He further alleged that this attack on said judgment was being made within two years of his discovery of this fraud and further alleged that he had a good and valid defense to the petition Walkup filed in that case.

At the trial, without a jury, plaintiff attempted to show by testimony and documentary evidence (other than a birth certificate), including school enumeration records, what his true and correct birth date was, but this evidence was conflicting.

Evidence was also introduced to show that the purported publication service on Robert Murphy in cause No. 8789 was based upon the wilful fraud of the plaintiff because plaintiff knew Robert Murphy and knew where he resided with his father Ed G. W. Murphy, and knew, or could with diligence have learned the address of the two named defendants, and where they could have been personally served.

During the course of the trial, the judge indicated by remarks from the bench his opinion that the purported service on Robert Murphy was wholly fraudulent on the part of the plaintiff; but that the decisive question in the case, on the basis of the conflicting evidence in regard to the matter, was: When was plaintiff born? After a lapse of several days and the taking of depositions and introduction of more evidence, judgment was entered for defendants, generally.

In this appeal from said judgment it is first argued on plaintiff's behalf that under any view of the evidence, he was a minor when he executed and delivered his respective deeds to Walkup and Greenan. This is correct. Evidence calculated to prove the date of plaintiff's birth was introduced both by plaintiff and defendants. Plaintiff's father testified that the births of his children had never been "recorded with the State (Health) Department: * * *" and he first said that plaintiff was born on June 26, 1928, but later admitted that the birth occurred at his father's home while he (the witness) was in western Oklahoma working. His testimony indicated that he had no firsthand knowledge as to the date of this birth, but he expressed the belief that the date given on the application for plaintiff's admission to his first school, Jones Academy, must have been correct when made. This application, together with different school enumeration records made later (but several years before this controversy arose), set forth birth dates for plaintiff, varying from April 1, 1927, to June 26, 1929. The judgment of the trial court may be attributable to the fact that there was no decided preponderance of evidence indicating plaintiff was born on any one of these dates, or in any one certain year of the three, 1927, 1928 or 1929. The trial Judge perhaps thought that such evidence was wholly insufficient to prove plaintiff's age. If so, he was in error. Plaintiff was not required to establish the exact date of his birth; all he had to do was prove that he was a minor when the deeds were executed. In this connection see Tyrell v. Shaffer, 70 Okl. 228, 174 P. 1074, wherein proof of the plaintiff's minority likewise did not establish the exact date of his birth. Also look at Gill v. Haggerty, 32 Okl. 407, 122 P. 641. There was no evidence that plaintiff was born before 1927 and whether he was born in 1927, 1928 or 1929 is immaterial—he still was not twenty-one years of age in 1945 and 1946 when he executed the deeds in question. If he was born on April 1, 1927,—the earliest date shown by any of the evidence—he was not 21 until April, 1948. It therefore follows that this action, filed in November, 1949, in which he disaffirms these deeds, was brought in ample time, under Title 12 O.S.1941 § 94, McElroy v. Calhoun, 177 Okl. 38, 57 P.2d 827; and, under any view of the evidence, plaintiff was a minor, or under twenty-one years of age, at the time he executed the Walkup and Greenan deeds in August, 1945, and August, 1946, respectively.

Despite the above conclusion, it does not follow that plaintiff was entitled to cancellation of the Walkup deed. Walkup's rights to the land therein described are protected by the judgment he obtained in Cause No. 8789 quieting his title thereto, if same is valid. However, if said judgment is void, as plaintiff charges, it affords his deed and title no such protection; and he then has only the so-called "ratification" deed of 1949 to rely upon. It is contended that the evidence bears out the charge that the purported service by publication was the result of fraudulent plans and action of the plaintiff in that cause, for the reason that plaintiff knew the named defendants were living and where they lived, and could readily have ascertained their whereabouts. This argument requires an examination of the evidence.

The undisputed facts established by the evidence bearing on this matter are that the next year after his allottee-wife's death, Ed Murphy remarried, and in 1946, returned to Wardville (only a few miles from Coalgate), and continued to reside there thereafter through the year 1948, having meanwhile acquired by this second wife, children aged 15, 13 and 11, respectively, who were in attendance at public school there. The family traded at the only store in that village or settlement. It was also undisputed that in May, 1948, when the purported service by publication was obtained the son, Robert Murphy, was attending his senior year of high school at Haskell Institute in Lawrence, Kansas, and returned to his home from this school before the end of May, where he permanently resided when not attending school. Reverend Asa Mills, of Wardville, gave testimony calculated to show that the Murphy family had resided there continuously through the years 1946, 1947 and 1948, were well known there, and, if Walk-

up had made any conscientious effort to do so, he could easily have ascertained their whereabouts before causing such purported service of publication to be made. Walkup admitted that he had known Ed Murphy over a period of years and that Murphy had done such jobs as cutting posts for him at various times. On cross-examination he admitted that Ed Murphy had "probably" worked for him "cutting posts in *1948*." He maintained, however, that he didn't know · where Murphy was on May 18, 1948, but quickly added: "I didn't think he was dead." Later, as a part of his answer to the question: "You knew you could find Ed Murphy, didn't you?" he said: "I guess I could have seen him if I had drove far enough." He also testified that before the Affidavit was filed he talked to his attorney, Mr. Paul, concerning service on the defendants in that case and Paul said to locate them, and. he made a trip to Wardville for that purpose. When asked, if on this trip he couldn't find any one over there who knew where Ed Murphy was, Walkup answered: "No, sir", but then went ahead to describe the location of the Murphys' home, showing that he was quite familiar with where they lived. When asked if he went to Murphys' house, he replied in the affirmative, but when asked "Did it look like anybody was living in the house?" he answered: "I couldn't tell. I didn't go in to see." In Walkup's direct examination we find the following:

"Q. Did you at the time (May, 1948, when you saw the Notice by Publication in the paper) or a short time thereafter, talk to Ed Murphy in the presence of James and Robert, about this suit? A. I talked to Ed; I couldn't say that James and Robert was there; I am not sure, but I did talk to Ed.

\* \* \* \* \* \*

"Q. Have you talked to Ed and James and the boys since 1945; have they ever made any contention to you that they disapprove the deal or that they didn't want to go on with the deal. A. *Yes, I have talked to them since '45, and they never made any intention.*"

While the above quotations do not include all of the evasive and unresponsive answers given by Walkup to the questions propounded to him by counsel, we think they are sufficient to show the general character of his testimony. We have carefully examined all of it, together with all of the other evidence bearing upon the matter and we have concluded that the trial judge would have been warranted in specifically finding, in keeping with his remarks from the bench, that at the time the Affidavit to Obtain Service by Publication, in Cause No. 8789, was made and filed, Walkup knew, should have known, or had a strong reason to believe that Ed Murphy and his sons Robert and James, defendants therein, not only were not dead, but that they were not residing out of the State, and that with very little diligence he could have located them or ascertained their whereabouts. In the case of defendants who are residents of the State, the law does not require plaintiff in attempting to ascertain their whereabouts, to exhaust every means within his control, as the Affidavit in this case attested. "Diligence" is sufficient, Title 12 O.S.1941 § 171; Richardson v. Howard, 51 Okl. 240, 151 P. 887, but here, we think it is unmistakably evident from the apparently reluctant admissions of Walkup, himself, that he did not exercise ordinary diligence within the commonly accepted meaning of that term, in trying to locate either Ed Murphy or his son, Robert. In our opinion, the evidence was more than sufficiently undisputed, clear and convincing to justify the conclusion that the purported service by publication was invalid and was the result of false and fraudulent acts and conduct of the plaintiff Walkup. It follows that the court's apparent jurisdiction of the defendants in Cause No. 8789, was no jurisdiction at all, and its judgment was void. The trial court in the instant case should have vacated it. See Davis v. Rowland, 206 Okl. 257, 242 P.2d 716, and authorities therein cited.

■■■ However, that judgment was not void on its face. It gave the appearance

of being valid and required extrinsic evidence or evidence dehors the judgment roll to reveal its invalidity. The only irregularity on the face of those proceedings pointed out by plaintiff's counsel is that no notice of the pendency of the action was served upon the Superintendent of the Five Civilized Tribes, after the effective date of the Act of Congress of August 4, 1947, 61 Stat. 731. The Notice of Pendency of Suit which Euel Moore, Walkup's first attorney in Cause No. 8789, caused to be issued, was served upon the Five Civilized Tribes' Superintendent, March 11, 1946. Plaintiff argues that this one notice was not sufficient—that another one should have been served after, as his counsel says, "restrictions" on the land "were re-imposed" by the Act of 1947, supra, since the judgment in said cause was not entered until after said Act's effective date. We find no merit in this contention. It is not necessary to become involved in the question of whether or not the land was in fact restricted on the date of Walkup's deed in order to settle the question of whether or not the judgment quieting the title he thereby acquired, gave to bona fide purchasers constructive notice, through such alleged defect, of the judgment's invalidity. The judgment itself was entitled to be considered by all strangers who inspected it, as a finding of every fact and a conclusion of every question of law necessary to support it, Home Development Co. v. Hankins, 195 Okl. 632, 159 P.2d 1013; Cressler v. Brown, 79 Okl. 170, 192 P. 417, unless, of course, such view was rendered untenable by the judgment roll. In this connection see Davis v. Rowland, supra. The judgment roll in Cause No. 8789 is silent as to facts indicating whether or not the land involved was restricted, except Walkup's petition revealed that the land involved was allotted to a three-quarters blood Chickasaw, survived by a New Born Choctaw husband and unenrolled mixed blood Indian children. As to bona fide purchasers, the judgment quieting Walkup's title was an adjudication of the validity of his conveyance and necessarily included a determination of his grantor's legal competence to give such a conveyance, both from the standpoint of age and freedom from Federal restrictions pertaining to conveyances by such Indians. Said Court, being a court of competent jurisdiction in land title matters in this State, having jurisdiction of the subject matter and apparent jurisdiction of the parties, had the power to decide both matters incorrectly the same as it had the power to decide them correctly, see discussion in Pettis v. Johnston, 78 Okl. 277, 190 P. 681, and Freeman on Judgments, 5th Ed., Vol. 1, p. 744, and a stranger to the action examining the proceedings had a right to consider such judgment, unappealed from as it was, a final and decisive determination of them, nothing appearing in the judgment roll to the contrary. Under the Congressional Acts pertaining to restrictions on inherited interests in land allotted to members of the Five Civilized Tribes, this land could have been free of such restrictions in the hands of Robert Murphy, after April 26, 1931, and subject to alienation by him in 1945, if an adult at that time, See Act of Congress of May 27, 1908, 35 Stat. 312, as amended by Act of Congress of April 12, 1926, 44 Stat. 239, and Act of Congress of May 10, 1928, 45 Stat. 496, and if the land was not "restricted and tax-exempt land" within the meaning of the Act of January 27, 1933, 47 Stat.L. 777, which latter Act and question is not mentioned or dealt with in the briefs. In this connection see Green v. Campbell, 187 Okl. 54, 100 P.2d 997; Glenn v. Lewis, 10 Cir., 105 F.2d 398; Kirby v. Parker, D.C., 58 F. Supp. 309, and other authorities cited in Brown v. Stufflebean, 10 Cir., 187 F.2d 347. The court in rendering its judgment in Cause No. 8789, in Walkup's favor may have been of the opinion, as the absence of any appearance or pleading by the Five Tribes' Superintendent or U. S. Probate Attorney, might indicate, and the argument of plaintiff's counsel inferentially asserts, that when Walkup's original deed from plaintiff was executed and delivered, approximately two years prior to the 1947 Act, supra, the land was unrestricted, and having been thus conveyed, there was no longer any interest of a restricted Indian involved to be protected pursuant to Notice served upon the Five Tribes' Superintendent. On the other hand, that court may have adopted the view that such Notice was necessary

under the 1926 Act, supra, and, under Federal Court decisions, that it is more or less "model and formal", and, as to time of its issuance and service, is not jurisdictional, U. S. v. Thompson, 8 Cir., 128 F.2d 173; Montgomery v. Sioux City Seed Co., 10 Cir., 71 F.2d 926, have concluded that the issuance and service of a second or cumulative notice, after the enactment of the 1947 Act, supra, was not necessary. Whatever may have been the court's conclusion, if any, with reference to these matters, it had the power to determine them and its apparently final judgment in accordance with such presumed conclusions, constituted a valid and unequivocal muniment of title in Walkup, as far as concerned bona fide purchasers and other strangers to the action. Accordingly, we hold that the judgment rolls' revelation in Cause No. 8789, that no second notice of Pendency of Suit was issued or served upon the Superintendent of the Five Civilized Tribes after the effective date of the Act of Congress of August 4, 1947, was insufficient to constitute notice to such purchasers of said alleged infirmity in the judgment.

■ As to the "ratification" deed of 1949, plaintiff's counsel maintains that it was a nullity on account of not being given and approved in the manner provided by the 1947 Act of Congress, supra. This is not disputed by opposing counsel, and we concur. After the effective date of this Act, with its imposition of the procedural requirements therein specified for such conveyances, plaintiff could do nothing to breathe life or validity into the 1945 deed, short of complying with those requirements. Otherwise, such Federal restrictions against alienation would be defeated. See Collins Inv. Co. v. Beard, 46 Okl. 310, 148 P. 846, and Colby v. Hayes, 186 Okl. 283, 97 P.2d 65. That instrument, therefore, can be accorded no significance herein.

This brings us to the next question in the case, namely: Since the judgment in Cause No. 8789 (though intrinsically void as we have seen) was not void on its face, then what was the burden of proof of the defendants, J. B. Shaw and The Ohio Oil Company, who purchased mineral interests in the land after said judgment had become final, and who, as far as the record herein shows, made such purchases in good faith and without notice either of any infirmity in the judgment, or that plaintiff was a minor when he executed the Walkup deed? It is argued on behalf of plaintiff that the burden was upon these defendants to prove that they were innocent purchasers and it is said that they failed to sustain this burden and consequently their asserted position cannot be upheld, citing 49 C.J.S., Judgments, § 306, p. 558; Rouse v. Rouse, 203 Ky. 415, 262 S.W. 596.

The only applicable statements we find in that portion of the text cited are:

"Where the judgment vacated is void, the rights of an intervening purchaser of the property affected will not be protected. Where the judgment is voidable but not void, its vacation will not divest the title of third persons acquired under it in good faith for a valuable consideration."

As seen by an examination of the authorities cited in the notes in Klinger v. Milton Holding Co., 136 Fla. 50, 186 So. 526, there is no real difference in the rule we are applying and those quoted. We merely add to the word "void" the additional words "on its face" and thus more clearly distinguish between a judgment that may be set aside in equity or by collateral attack,— "a dead limb upon the judicial tree" to be lopped off at any time, as it were, Pettis v. Johnston, 78 Okl. 277, 190 P. 681, and one which can only be set aside on appeal or other statutory proceedings commenced in a specified time and manner; and, if not so nullified, must stand before the world as it appears—a good and sufficient adjudication. See Harjo v. Johnston, 187 Okl. 561, 104 P.2d 985, 999, and the dissenting opinion therein in which the above Florida case is cited; Van Noy v. Jackson, 68 Okl. 44, 171 P. 462. The failure of some courts, by the use of loose and general language to make clear this distinction, has led to apparent conflict and confusion in the decisions.

■ A syllabus by the reporter's editorial staff in the Rouse case, cited as above noted, seems to place upon the purchaser from a judgment creditor the burden not

only to plead but "if denied to show that he purchased without notice of infirmity" in the judgment. However, a reading of the opinion reveals that the court based its holding primarily on the fact that the plaintiff did not *plead·* he was a bona fide purchaser and any inference that he was such a purchaser, was "denied" by evidence that the purchaser was the judgment creditor's son and by other evidence and circumstances indicating that he knew or should have known of the invalidity of the judgment his said vendor and father had obtained. Of course, this court has also decided cases in which the rule stated in the syllabus is very similar to that stated in the Rouse case, supra. See for instance Bruce v. Overton, 54 Okl. 350, 154 P. 340; Bigpond v. Page, 125 Okl. 282, 257 P. 793; Austin v. Evans, 132 Okl. 238, 270 P. 26. The variance in the statements and application of the rule as to proving a bona fide purchase are reflected in decisions (most of which concern a purchaser assertedly without notice of a prior unrecorded deed) annotated at 107 A.L.R. 502. Similar variances in previous decisions of this court were recognized in Luschen v. Stanton, 192 Okl. 454, 137 P.2d 567, 568, dealing with the rights of a judgment creditor purchasing at his own execution sale. There we held:

"A creditor who purchases at his own execution sale may none the less be a bona fide or innocent purchaser, *unless it is shown* that he has actual or constructive notice of the defects or other things upon which opposing claims are based, or that he has paid no value or has acted in bad faith." (Emphasis ours.)

In the body of that opinion we referred to the three essential elements of a "bona fide purchaser", noting that one particular element may often be *implied* where the two other elements are shown. Of previous opinions to the effect that a purchaser at his own execution or judicial sale is not a bona fide purchaser, it was said:

"We find few, if any, such expressions or applications of the rule, however, where one or more of the 'elements' referred to is not missing. Gen-

erally, each case involving the application of equitable principles is to be examined with most careful attention to all the facts in the given case. * *

"In the present case it is beyond question that there is present the element of 'absence of notice, actual or constructive, of outstanding rights of others.' *Actual notice is not shown or suggested.* Constructive notice is not shown because the Stanton deed was not recorded at the time Brown purchased at sheriff's sale, and the claim of defendants is not based upon any fault in the proceedings sponsored by Brown or under his control and for which he was responsible. ·Thus there is· no notice to Brown of anything forming the basis of defendants' claim. It is to be seen therefore that this case is *not of the class of cases based upon notice, actual or constructive.*" (Emphasis ours.) ·

It appears from the above-cited A.L.R. annotations that in at least eighteen states, there are decisions holding that where one relies upon being a bona fide purchaser, and has proven his purchase and payment of a valuable consideration, the burden of showing that he purchased with notice is on the party asserting or relying on notice to defeat the bona fide purchase claim. We think, as indicated in the Luschen case, supra, *that the application of the rule, if stated broadly and generally, must depend to some extent on the facts in the particular case.* Where the judgment is valid on its face and there is no relationship, fiduciary or otherwise, between judgment creditor and purchaser, see Allison v. Caruthers, 205 Okl. 582, 239 P.2d 759, or other fact or circumstance to suggest such notice on the part of the purchaser, and the purchaser's plea of bona fide purchase is supported by proof of a genuine purchase and payment of a valuable consideration, as here, he should not be required to go further and attempt to prove a negative, i. e., that he never had notice, either actual or constructive, of the infirmity in the judgment or of any claim or unasserted right of the judgment debtor, from any other source. Considerations of public policy and the stability

of real estate titles, to say nothing of the equities involved, demand that the onerous and absurd burden of proving such negatives be not placed upon such purchasers in such situations. Here the equities are all on the side of the innocent purchasers. Walkup's disaffirmed or voided deeds furnish him at best, questionable color of title and because of his fraud, the equities on the side of the plaintiff, outweigh any he may have. It would certainly be inequitable, however, to make Walkup's vendees and their assignees suffer for his conduct when there is not a scintilla of evidence either to connect them with his conduct or to show that they had any notice of it. In this case, in so far as the record shows, the defendants J. B. Shaw and The Ohio Oil Company, before the purchase of their mineral deed and oil and gas lease, were not only strangers to the title but were also strangers to Walkup. Here, as said in the Luschen case, supra, actual notice is neither shown nor suggested; though we note from some of the leading questions propounded by counsel for plaintiff, he appears to have attempted, without success, to prove that the question concerning Walkup's title which gave rise to his obtaining the so-called "ratification" or "curity" deed of 1949, was first raised by one or the other of these purchasing defendants. But we find no fact or circumstance that might be interpreted as giving these defendants constructive notice of plaintiff's claim, except the judgment roll in Cause No. 8789, which we have found constituted no such notice. We think in such case there is a presumption in favor of the innocence of the purchaser, and until some circumstance appears to indicate that he was not innocent, or wholly without knowledge, he must be so considered, where he has made what appears to be a genuine legitimate purchase. It therefore follows that the burden is upon him who contends this was not true or the facts in the matter, to go forward with the evidence and show that. The bona fide purchaser doctrine has been incorporated into our statute with reference to vacating a judgment rendered without other service than by publication, Title 12 O.S.A.1951 § 176; Nusbaum v. Burns, 206 Okl. 387, 243

P.2d 994, and from our examination of the evidence we think the present case is a proper one for its application. We therefore hold that the trial court committed no error in refusing to cancel the mineral deed and the oil and gas lease, respectively, of the defendants J. B. Shaw and The Ohio Oil Company.

■ We have saved until last the question of whether it was encumbent upon plaintiff to restore the consideration paid to him for the Walkup and Greenan deeds, upon his disaffirmance of them by this action. Because of the latter part of Section 19, Title 15 Okl.Stat.1941, requiring such restoration if he was over 18 when the deeds were executed, this is the only phase of the case in which it was important to establish his age with more definiteness or particularity than encompassed in the broad range of minority. It will be remembered that plaintiff's amended petition set forth his birth date as June 26, 1928, and all of the school enumeration records he introduced set forth that identical date. However, later school enumeration records introduced by defendants and which are apparently of no less authenticity and entitled to no less credibility (except the two that bear no evidence of a signature and the one dated January 21, 1946, appearing to have been signed by plaintiff's stepmother, instead of his father) set forth as plaintiff's birth date, various dates before the month of August, in the years 1927 and 1929. Defendants' Exhibits 12 and 13 are plaintiff's two draft registration certificates dated in 1945, and 1948, respectively, and they set forth his birth date as June 26th, in 1927, rather than the same calendar date in 1928. Defendants' Exhibit 14, being a petition for the issuance to him of Letters of Guardianship for his minor children (including plaintiff) executed by Ed G. W. Murphy and filed in the County Court of Pittsburg County in 1931, superficially, at least, seems to corroborate the 1927 date because it sets forth plaintiff's age at that time as: "4 yrs." Perhaps, it is with this latter evidence in mind that plaintiff's counsel, after the close of the evidence and during the final arguments, followed his

previous offer to restore the consideration paid by Walkup for his 1945 and 1949 deeds, with a similar offer to Greenan for his 1946 deed. That part of the record containing the colloquies between the attorneys and the trial judge shows that these offers were not only rejected as coming too late, but it also seems to indicate, that defense counsel and the trial judge regarded them as of slight importance in view of the all important fact that there had been no preponderance of evidence to definitely fix plaintiff's birth date. In fact, some of defense counsel's remarks might be interpreted as indicating that his clients were not interested in plaintiff's money and be regarded as a waiver of any further attempt by plaintiff to restore the consideration to them. In view of plaintiff's original tender of these considerations in his pleadings, and the further fact that as the judgment appealed from was for the defendants generally and accordingly included no adjudication with reference to an accounting or adjustment of financial matters between plaintiff and the defendants, Greenan and Walkup, as prayed for in plaintiff's pleadings, and for the purpose of which, some evidence was introduced on his behalf; as to which, see Yell v. McCarty, 90 Okl. 151, 216 P. 158, and in view of our determination of the erroneousness of the judgment and our conclusion, from all of the factors involved, that a new trial will be necessary, we hold that plaintiff sufficiently complied with the provision of Section 19, Title 15 O.S.1941, supra, concerning restoration of consideration upon disaffirmance. This decision is made without prejudice to said defendants' prerogative, in further proceedings in this case, of introducing further evidence establishing that plaintiff, though a minor (as already determined herein) was "over the age of 18" at the time he executed both of their original deeds, as it is their burden to do, 43 C.J.S., Infants, § 117, p. 330, unless waived. As to whether his counsel's making of the above described offers in the trial below, constituted a waiver of such proof, we express no opinion, and likewise, reserve opinion on the question of whether defendants' apparent lack of interest in such offers, entirely relieved plaintiff of the statutory requirement to restore the consideration for those deeds. The sole purpose of remanding this case to the District Court for a new trial, rather than merely directing that a judgment be entered settling only the major land title questions, is to afford an equitable adjustment between these defendants. As we have determined that the defendants J. B. Shaw and The Ohio Oil Company were bona fide purchasers, their rights should in no way be affected by the settlement or determination of such issues between plaintiff and the defendants, Greenan and Walkup.

As hereinbefore demonstrated, the trial court erred in refusing to vacate the judgment in Cause No. 8789, of said court. As also demonstrated, the deeds executed by plaintiff on August 17, 1945, and August 22, 1946, respectively, and delivered to H. C. Walkup and Patsy Greenan, Jr., were at least voidable and upon plaintiff's disaffirmance thereof, and (depending upon proof as to whether he was over or under 18) restoration of the consideration paid therefor, are subject to cancellation, in so far as they purported to alienate or convey any right, title or interest of plaintiff in the realty described therein. Such cancellation should be effected in future proceedings in this case, upon such restoration of consideration, if found to be in order by stipulation of proof that plaintiff was over 18, and/or a settlement of accounts between the plaintiff and said defendants, whereupon, plaintiff's title should be quieted against all claims of the defendants, H. C. Walkup and his wife, Essie Walkup, Patsy Greenan, Jr., and E. F. Courtney, but not against the defendants J. B. Shaw and The Ohio Oil Company. The title of the latter two defendants to the oil and gas lease and mineral rights held by them respectively should also be quieted against any and all claims of the other parties to the action.

We do not purport or intend by this decision to settle any property rights incident to or arising directly out of the execution and delivery of the 1945 and 1946 deeds, except to hold:

(1) That any right based upon the 1945 deed that Walkup may have had to have title in the land covered thereby quieted in him, was exercised in an invalid manner, resulting in a judgment that, as between him and the plaintiff herein, was a nullity;

(2) That plaintiff had a right to disaffirm said deeds as he has done in this case, and upon appropriate restoration of the consideration therefor, in case he was over 18 when he executed them (which fact is to be later determined by proof or stipulation) he will be entitled to cancellation of said deeds;

(3) That such disaffirmance and cancellation does not and will not affect in any way the rights of the defendants, J. B. Shaw and The Ohio Oil Company.

The trial court's judgment is therefore affirmed in part and reversed in part with directions to said court to set aside its previous order overruling plaintiff's motion for a new trial and that part of its judgment on the merits quieting the title of the defendants, H. C. Walkup, Essie Walkup and Patsy Greenan, Jr., against the claims of the plaintiff. In its new judgment, the trial court should also vacate and set aside the judgment entered July 15, 1948 in Cause No. 8789 insofar as it purports to quiet title of H. C. Walkup against Robert Murphy, plaintiff in this action; leaving all matters not finally determined herein to be determined at a new trial in a manner not inconsistent with the determinations herein made, and upon such issues as therein may be joined by whatever appropriate pleadings and evidence may be brought before that court for that purpose.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., concur.

O'NEAL, J., concurs in result.